ALEXANDER E. WOLF (SBN 299775)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
awolf@milberg.com
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAL NELKIN, individually and on behalf of all similarly situated persons,<br><br>          Plaintiff,<br><br>   v.<br><br>KROTO INC. d/b/a iCanvas and iCanvasArt,<br><br>          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Tal Nelkin ("Plaintiff") brings this class action complaint individually and on behalf of all others similarly situated against Kroto Inc. d/b/a iCanvas and iCanvasArt ("Defendant" or "iCanvas"). The allegations contained in this class action complaint are based on Plaintiff's personal knowledge of facts pertaining to himself and upon information and belief, including further investigation conducted by Plaintiff's counsel, as to the remainder.

## I. NATURE OF THE ACTION

1. "It has long been considered a deceptive practice to state falsely that a product ordinarily sells for an inflated price but that it is being offered at a special reduced price, even if the offered price represents the actual value of the product and the purchaser is receiving his money's worth." *F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 387 (1965).

2. This is a class action lawsuit brought to address Defendant's misleading and unlawful pricing, sales, and discounting practices on its website www.iCanvas.com (also www.iCanvasArt.com). Defendant advertises *fake and inflated comparison reference prices* to deceive customers into a false belief that the sale price is a deeply discounted bargain price.

3. Anyone visiting the website during a "30% off sitewide" promotion who buys an item on "sale" from a "regular" price is being misled. So too is any person who buys an item on "sale" from a "stricken" regular price. This is because that item has not been sold or listed for sale in the recent past on the website at the regular price. Further, because the website is the only channel through which Defendant's custom products are sold, Defendant cannot justifiably claim another retailer has sold that exact same item for the regular price, let alone that the regular price is the genuine market price.

4. All the reference prices on the website are fake. They are not original, regular, or former prices. They are inflated prices posted to lure consumers into purchasing items from Defendant.

5. Defendant also *falsely advertises sales as being of limited duration*, or available for a limited time in connection with a holiday or event, when the sale is actually

perpetual.  This is accomplished through language like "Ends Today!", "Ends Soon!", or similar, along with countdown timers to the sale's purported expiration.  In truth, when one sale expires, another sale is promptly instituted.  This cycle continues over and over.

6.     Beyond that, Defendant's products sold on the website not only have a market value lower than the promised regular price, but the market value of the products is also lower than the "sale" price.  As a result, consumers received a product worth less than the price paid.  An example illustrates the point.  Assume a company knows a product will sell in the marketplace at $30.  But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" for a "limited time" at 60% off (i.e., $60 off).  Because consumers value products based on the regular price, and a limited-time sale conveys additional savings, the company can sell that $30 product for $40.

7.     As a result, consumers are deceived into spending money they otherwise would not have spent, purchasing items they would not have purchased, and/or spending more money for an item than they otherwise would have absent deceptive marketing.

## II.    PARTIES

8.     Plaintiff Tal Nelkin is a resident of the State of California and County of Los Angeles. He was present in Los Angeles, California at the time he made his purchase from the website.

9.     Defendant Kroto Inc. d/b/a iCanvas and iCanvasArt.com is an Illinois corporation.  Defendant is an online retailer in the wall art and home décor market, advertising and selling its custom products through www.iCanvas.com (also www.iCanvasArt.com).  Through the website, Defendant sells its products to consumers in California and nationwide.  Defendant's website states that Defendant is headquartered at 8280 Austin Ave., Morton Grove, IL 60053.

10.     On information and belief, Defendant is owned and operated by its executive officers and directors Leonid Oaks and Peter Razumovskiy.  These individuals directed

the unlawful marketing practices alleged herein, had knowledge and control over such practices, and ratified such practices.

## III. JURISDICTION AND VENUE

11.     This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.  As set forth herein, Defendant owns and operates the website, and marketed, sold, and shipped products to purchasers located in this district, including Plaintiff.

13.     Further, as set forth herein, Defendant has contacts in this district sufficient to subject it to the personal jurisdiction of this district as if this district were a separate state. Defendant continuously and systematically places goods into the stream of commerce for distribution in California, maintains an interactive commercial website, offers to ship products to California, maintains a California-specific privacy policy, and allows customers in California to order products.  Exercising jurisdiction over Defendant is fair, just, and reasonable considering the quality and nature of Defendant's acts that occur in California and which affect interests located in California. Defendant has purposefully availed itself of the privilege of conducting activities in California, and should reasonably anticipate being haled into court in California.

## IV. GENERAL ALLEGATIONS

### A.    Company Background

14.     iCanvas was founded in 2006 by its current CEO and chairman Leonid Oaks. On the website, iCanvas describes itself as selling "handcrafted canvas art," posters, and frames.

15.     The website further states that its products "use only premium ingredients." Regarding its canvas prints, "We use poly-cotton canvas to secure the advantages of both polyester and cotton. As a result, our canvas is able to absorb and hold color as a cotton canvas would, but still delivers the sharp, vibrant finish of a polyester canvas. This allows your canvas print to withstand the test of time and still look like it did the first day you hung it on the wall. … During the printing process, our ink is just as important as the canvas it is printed on. We use high quality, fade and water-resistant Epson ink. … We use kiln dried North American Pine that is finger spliced. This process removes all of the moisture from the sturdy wood, preventing it from shrinking. Finger spliced wood allows the frame to keep its straight shape over time, since frames made from continuous lumber tend to curve when hung on a wall over time."[1]

16.     The website emphasizes the custom-made nature of Defendant's products, stating "We print, hand-stretch and assemble all our pieces at our facility. The Personal Touch: This is the only way we can be sure to deliver on the highest standards of quality and add a personal touch that is distinctively iCanvas.  We do all of this because we are passionate about art and the relationship our customers have with our product."[2]  The website further states: "We Create Art. We are not an art factory. At iCanvas, our work isn't just 'produced' like some soulless trinket. We create. It is born of passion in the flames of our Morton Grove, IL facility, where quality, inspiration, and a bit of alchemy unite to give the world a beautiful piece of art and fill the gap between artist's masterpiece and you."[3]

17.     Defendant, through the website, sells thousands of art prints each year to consumers in California and nationwide. Defendant touts that it has 52,588 reviews posted to Trustpilot.

**B.      Defendants' False and Deceptive Pricing Scheme**

---

[1] https://www.icanvas.com/our-quality (last accessed September 29, 2023).
[2] *Id.*
[3] https://www.icanvas.com/about (last accessed September 29, 2023).

18.     Defendant's business model relies on deceiving consumers with fake sales. Defendant prominently displays on the landing page of the website some form of sale where all products are supposedly marked down by a specific percentage, for example, 25% or 30% off.  When one sale expires, another substantially equivalent sale is promptly instituted.  This cycle continues over and over.



19.     All products on the websites are represented as being discounted from a substantially higher reference price.  On individual listing pages, the supposed markdowns are represented to the consumer by prominently displaying a "crossed-out" reference price next to the sale price.  Additionally, Defendant runs the same fake promotions by providing customers with sitewide promo codes and/or discounts.

20.     Defendant also creates a false sense of urgency though high-pressure sales tactics. This is accomplished through language like "Ends Today!", "Ends Soon!", or similar, along with countdown timers to the sale's purported expiration.  In truth, when one sale expires, another sale is promptly instituted.



21.    Defendant employs these deceptive tactics to convey to customers that the product was previously listed or sold in the recent past at the reference price, but is now being listed and sold to the customer at a substantial discount.

22.    However, this reference price is always a falsely inflated price because Defendant never lists or sells items at the reference price. The only purpose of the reference price is to mislead customers into believing that the displayed reference price is an original or regular price at which Defendant usually lists and sells the item in the recent past. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount, when in reality the alleged discount is false.

23.    Moreover, because Defendant's "made on-demand" products are sold only through the website, the reference price cannot mean the prevailing market price of the product at any outlet other than the website.

24.    For example, based on archived copies of the website, on <u>January 23, 2023</u>, the website displayed a 30% off sitewide sale that supposedly "ENDS TODAY!"



25.    That sale was false and misleading.  When it supposedly expired, it was immediately replaced by another similar sitewide sale throughout February, March, April, May, June, July, August, and September 2023, as shown below.

<u>Website on February 8, 2023:</u>

SALE | **20% OFF SITEWIDE** | ENDS SOON!

Website on March 7, 2023:



Website on March 24, 2023:



Website on April 1, 2023:



Website on May 1, 2023:



8

Website on June 1, 2023:

| BEST SELLERS | SUBJECTS | STYLES | ARTISTS | BY ROOM | BY COLOR | NEW! | CUSTOM | **LIMITED EDITIONS** |

SALE | **20% OFF SITEWIDE** | **ADDITIONAL 10% OFF $100 ORDERS** | ENDS TOMORROW!

Website on July 11, 2023:

we ♥ art

| BEST SELLERS | SUBJECTS | STYLES | ARTISTS | BY ROOM | BY COLOR | NEW! | CUSTOM | **LIMITED EDITIONS** |

FLASH SALE! **EVERY ITEM MARKED DOWN 40%** — UNTIL 3PM (PST)!

Website on July 14, 2023:

we ♥ art

| BEST SELLERS | SUBJECTS | STYLES | ARTISTS | BY ROOM | BY COLOR | NEW! | CUSTOM | **LIMITED EDITIONS** |

SALE | **25% OFF SITEWIDE** | ENDS SUNDAY!

Website on August 3, 2023:

we ♥ art

| BEST SELLERS | SUBJECTS | STYLES | ARTISTS | BY ROOM | BY COLOR | NEW! | CUSTOM | **LIMITED EDITIONS** |

FLASH SALE! **EVERY ITEM MARKED DOWN 35%** — ENDS MIDNIGHT(PST)!

Website on August 23, 2023:



26.    This is not a new or isolated sales practice by Defendant, but continued regularly throughout at least 2022, 2021, 2020, 2019, 2018, 2017, 2016, and 2015, and on information and belief years earlier.  Additional exemplar continuous and perpetual sales on the website are shown below.

Website on April 12, 2022:

CLASS ACTION COMPLAINT

1

Website on April 12, 2021:



SALE | **50% OFF SITEWIDE** | ENDS TOMORROW!

Website on April 25, 2020:



WEEKEND SALE! **55% OFF SITEWIDE** | ENDS TOMORROW!

Website on April 20, 2019:



SALE! **50% OFF SITEWIDE** | **ADDITIONAL 20% OFF** ORDERS OVER $150 | ENDS SUNDAY

11

Website on February 5, 2018:



Website on April 20, 2017:

Website on March 22, 2016:

Website on March 15, 2015:



27.     These pricing and advertising practices reflect high-pressure fake sales and are deceptive. Defendant intends to mislead consumers into believing that they are getting a bargain by buying products from the website on sale and at a substantial and deep discount. But Defendant never offers for sale or sells any of its products at the reference price. The reference price is, therefore, artificially inflated, and the advertised discounts are phantom markdowns.

28.     To be sure, Defendant's products sold on the website have a market value lower than the promised "regular" price, and as a result, consumers were harmed.

29.     Beyond that, on information and belief, the market value of the products are also lower than the fake "sale" price. As a result, consumers received a product worth less than the price paid. An example illustrates the point. Assume a company knows a product will sell in the marketplace at $30. But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" for a "limited time" at 60% off (i.e., $60 off). Because consumers value products based on the regular price, and a limited-time sale conveys additional savings, the company is able to sell that $30 product for $40.

**C.     Plaintiff's Purchase from the Website**

30.     On August 1, 2023, Plaintiff visited the website to purchase a Barbie canvas print. He saw on the website's homepage that all products were on sale at 15% off. He did not purchase the product on that date but was still considering it.

31.     On August 2, 2023, Plaintiff returned to the website and saw on the landing

CLASS ACTION COMPLAINT

page that all products were subject to a limited time flash sale of 40% off that was going to end that day.  He then navigated to the listing page for the Barbie canvas print and saw that the product was marked down by 40% off the regular price.  Specifically, the product in the desired dimensions showed a crossed-out regular price of about $100 followed by an adjacent, bolded, discounted price of $59.99.  He then purchased the product with the understanding that he was receiving all advertised discounts off the regular price.  After accounting for sales taxes, Plaintiff paid $65.69.

32.   As of September 22, 2023, the product listing was still advertised on sale, then at 30% off.  Notably, however, it appears the reference price for that product in the same dimensions somehow *increased to $110.00*, and the sale price after taking the 30% off is now *$77.00*.  This is further evidence that Defendant's reference prices are bogus.  An image of the product listing as of September 22, 2023 is shown below.



33.   Plaintiff thus viewed and relied on the website's purported current and limited-time sale promotion.  He relied on the representation that the product had a regular price and market value of at least $100, and in fact been offered for sale in the recent past at the stated regular reference price.  And he relied on the representation that the product was truly on sale and being sold at a substantial markdown and discount for a limited time.

34.   The product Plaintiff purchased was not substantially marked down or discounted, and any discount he was receiving had been grossly exaggerated.

35.   For at least the 90-day period prior to Plaintiff's purchase, and months and years more, Defendant has not offered any of the items sold on its website at the reference prices.

36.   Plaintiff would not have purchased the items at the advertised price, or would not have paid as much as he did, had Defendant been truthful. Plaintiff was persuaded to make his purchase because of the fake sale based on a fake reference price.

37.   Plaintiff continues to be interested in purchasing home décor in the future, but he will be unable to trust and rely on Defendant's advertising, and so will not purchase the product from Defendant. Absent injunctive relief, Plaintiff cannot know whether Defendant's regular prices represent honest prices at which the products were listed for sale for a reasonable period of time, or if Defendant's sales are perpetual.

**D.    Research Shows That the Use of Reference Price Advertising Schemes Influence Consumer Behavior and Perceptions of Value**

38.   Academic studies support the effectiveness of Defendant's deceitful pricing scheme. In an article titled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[4]   Thus, "empirical studies indicate that, *as discount size increases,*

---

[4] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

*consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases*.[5]  Indeed, the Ninth Circuit observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

39.    Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[6] The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[7]

40.    In another publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."[8]

41.    Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[9]

42.    The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the

---

[5] *Id.* at 56 (emphasis added).

[6] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[7] *Id.*

[8] Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[9] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

product."[10]   This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[11]

43.   Accordingly, research confirms that deceptive advertising through the use of fake reference pricing is intended to, and in fact does, influence consumer behavior by artificially inflating consumer perceptions of a given item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

### E.   Defendant's Deceptive Pricing Practice Violates Federal Law

44.   The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendants, are deceptive practices that violate the FTCA.

45.   Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the ***former price*** is the actual, bona fide price at which the article was offered to the public on a ***regular basis*** for a reasonably ***substantial period of time***, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price*** was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively

---

[10] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

[11] *Id.*

offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some ***remote period in the past***, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduced.

46.    The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price.  Under 16 C.F.R. § 233.1:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

47.     The FTCA also prohibits retailers from offering fake limited duration sales. See 16 C.F.R. § 233.5 which provides:

[Retailers] should not represent that they are selling at "factory" prices when they are not selling at the prices paid by those purchasing directly from the manufacturer.

…

They should **not offer an advance sale** under circumstances where they **do not in good faith expect to increase the price at a later date**, or make a 'limited' offer which, in fact, is not limited.

### F.     Class Action Allegations

48.     Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

<u>**California Class:**</u>
All persons in California who purchased one or more products from www.iCanvas.com or www.iCanvasArt.com, during the Class Period, at a discount from a higher reference price.

49.     The California Class is collectively referred to as the "Class." Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest. Also excluded from the Class are persons or entities that purchased products from Defendant for purposes of resale.

50.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.

51.     Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

52.     **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are in excess of 500,000 members of the Class.

53.     **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described herein.

54.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to diligently prosecute this action.

55.     **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

      a.  Whether, during the Class Period, Defendant advertised false reference prices on products offered on the website.

      b.  Whether, during the Class Period, Defendant advertised price discounts from false reference prices on products offered on the website.

      c.  Whether the products listed on Defendant's website during the Class Period were offered at their reference prices for any reasonably substantial period of

time prior to being offered at prices that were discounted from their reference prices.

d.  Whether Defendant's deceptive pricing scheme using false reference prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.

e.  Whether Defendant's deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, et seq.

f.  Whether Defendant's use of false reference prices on products offered on their website during the Class Period was material.

g.  Whether Defendant had a duty to disclose to customers that the reference prices were fake "original" prices in furtherance of sham sales.

h.  Whether the members of the Class are entitled to damages and/or restitution.

i.  Whether injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising.

j.  Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

56.  **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the

conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

57.   The products at issue in the action are substantially similar in all material respects.  Namely, the products were all subject to a sitewide sale, advertised with a false reference price, advertised with a strike-through reference price, advertised with a false sale price, and advertised with a fake sale expiration date.  The products are also all sold by Defendant and fall under the umbrella of art and home décor.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

58.   All applicable statutes of limitations have been tolled by the delayed discovery doctrine.  Plaintiff and Class members could not have reasonably discovered Defendant's practice of running perpetual sales, based on false reference prices, with false expiration dates, at any time prior to filing this class action litigation.

59.   A reasonable consumer viewing the website on multiple occasions would simply believe that a product is on sale for the limited time period represented on the website.  Short of visiting and checking the website for months continuously, a reasonable consumer would not suspect that Defendant's sales and pricing practices were false and misleading.  Nor would a reasonable consumer be able to ascertain the market value of the products being sold absent extensive investigation.

60.   Plaintiff did not learn of Defendant's deceptive practices alleged herein until commencing this action.

61.     As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, et seq.)

### (On Behalf of the California Class)

62.     Plaintiff restates the preceding allegations as if set forth herein.

63.     California Business and Professions Code section 17200 et seq., known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

***Fraudulent***

64.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

65.     Here, members of the public are likely to be deceived by Defendant's conduct as alleged above.  Among other things, Defendant affirmatively misrepresented the reference prices of products, which thereby misled and deceived consumers into believing that they were buying merchandise at substantially marked-down and discounted prices. Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly listed or sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that the products were worth more than they actually were.

66.     Defendant's representations that its products were on sale, that the sale was limited in time, that the products had a specific regular price, and that the customers were receiving discounts, were false and misleading.

67.     Furthermore, because Defendant sells custom products, the false reference price could not have been the market price because Defendant never listed or sold products at the false reference price, let alone for a recent and substantial period of time.

68.     In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the reference prices advertised and published on their websites were not, in fact, prices at which Defendant's items were listed or sold in the recent past for a reasonably substantial period of time, but in reality, the products never were offered or sold at the advertised reference prices. Defendant also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale.  Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

69.     Defendant's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing they are receiving a product that is worth more than it actually is, by presenting a fake sale price.

70.     Defendant's representations were materially misleading to Plaintiff and other reasonable consumers. Consumers are heavily influenced by price, including significant price reductions of purported limited duration, as employed by Defendant's high-pressure sales tactics.

71.     Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above, believing that he was receiving a genuine discount of limited duration from a prevailing and genuine market or regular price.

72.     Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at minimum, they would not have paid as much for the items as they ultimately did. Plaintiff and the class's reliance was a substantial factor in causing them harm.

73.     Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items he purchased from Defendant, or, at minimum, would not have paid as much for the items as he ultimately did.

74.     As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Class.

***Unfairness***

75.     Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

76.     Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly listed or sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

77.     Defendant's conduct was and continues to be of no benefit to purchasers of the products, as it is misleading, unfair, unlawful, and is injurious to consumers. It is also against public policy, as it harms fair competition. For example, the federal Lanham Act includes prohibitions on "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a). Defendant is siphoning sales away from sellers who compete fairly on price and do not promote fake regular prices and fake sales of limited duration. Further, there is no benefit to consumers by paying the normal price when it is advertised on sale for a limited time.

78.     Indeed, "[t]here is a strong public interest in preventing false advertising of products in the marketplace." *POM Wonderful LLC v. Purely Juice, Inc.*, 2008 WL 4222045, at *16 (C.D. Cal. July 17, 2008) (finding that where defendant has made false claims as to the contents of its product and the public is deceived into paying for what it believes is an accurate representation of the product, the public interest favors injunctive relief to prevent the false advertising of defendant's product); *United States v. Kennedy*,

2007 WL 404915, at *4 (N.D. Cal. 2007) (ordering removal of false advertising from website).

79.     The harm to Plaintiff and members of the California Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

80.     As a result of Defendant's unfair business acts and practices, Defendants has and continues to unfairly obtain money from Plaintiff and members of the proposed California Class.

***Unlawful***

81.     A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

82.     Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations.  Specifically, as detailed herein, Defendant violated 16 C.F.R. §§ 233.1 and 233.5, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

                              *        *        *

83.     In the alternative to those claims seeking remedies at law, Plaintiff and class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of

equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").  Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs are different from the standard that governs legal claims.

84.     Plaintiff, on behalf of himself and the members of the California Class, seeks restitution and restitutionary disgorgement of all moneys received by Defendant through the conduct described above.

85.     Plaintiff, on behalf of himself and the members of the California Class, seeks an injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products on the website. Plaintiff and class members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, et seq.

### (On Behalf of the California Class)

86.     Plaintiff restates the preceding allegations as if set forth herein.

87.     The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

88.     A separate section of the FAL, Cal Bus. & Prof. Code § 17501,  provides:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

89.     Defendant violated Cal Bus. & Prof. Code § 17501 as explained herein.

90.     Defendant routinely disseminated on the website false reference prices for the products offered for sale on the website, including to Plaintiff. These statements were untrue or, at the very least, were misleading. Among other things, Defendant never offered its custom products on the website at the reference prices displayed in connection with their products. Further, Defendant never offered products on the website at the reference prices within the three months immediately preceding the publication of the reference prices. Defendant thus misled customers, including Plaintiff, into believing that the

reference prices are or were genuine original, regular, or former prices and that the "sale" prices relative to the published reference prices, in fact, reflected real and substantial discounts.

91.  Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

92.  Defendant knew that its dissemination of reference prices for the products sold on its website was untrue and/or misleading. Among other things, Defendant represented the reference prices in connection with the products sold on its website even though they knew that such products had rarely, if ever, sold at the crossed-out reference prices.

93.  As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the California Class have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all members of the California Class, and to enjoin Defendant from continuing their false and misleading advertising practices in violation of California law in the future.

94.  Plaintiff and class members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing.

95.  In the alternative to those claims seeking remedies at law, Plaintiff and class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact

that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard and necessary elements for a violation of the FAL under Cal Bus. & Prof. Code § 17501 are different from the standard that governs legal claims.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, et seq.

#### (On Behalf of the California Class)

96.     Plaintiff restates the preceding allegations as if set forth herein.

97.     The Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 *et seq.* (the "CLRA"), is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

98.     Plaintiff and each member of the California Class are "consumers" as defined by California Civil Code section 1761(d). Defendants' sale of products on the website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code

section 1761(e). The products purchased by Plaintiff and the class are "goods" within the meaning of California Civil Code section 1761(a).

99.     Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the class which were intended to result in, and did result in, the sale of Defendant's products:

a.   Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9))

b.   Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13))

c.   Misrepresenting that goods are of a particular standard, quality, or grade (Cal. Civ. Code § 1770(a)(7))

d.   Representing that goods do have characteristics they do not actually have (Cal. Civ. Code § 1770(a)(5))

100.    With regards to section 1770(a)(9), (7), and (5), Defendant advertised and represented products on the website with the "intent not to sell" them as advertised and misrepresenting product characteristics and standard because, as explained herein, (a) the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing the merchandise was previously offered for sale and/or sold at the higher reference prices for some reasonably substantial period of time, and were valued in the market at the advertised "regular" price, (b) Defendant sells their custom products only on the website and thus there is no other channel through which the products have previously been offered for sale and/or sold at the false reference price, and (c) Defendant falsely represent the products as on sale for limited time when in truth a new equivalent sale is instituted after the expiration of an existing sale.

101.    With regards to section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed in that Defendant's

merchandise was rarely, if ever, previously offered for sale and/or sold at the higher reference prices for a reasonably substantial period of time, (b) Defendant sells the products only on the website and thus there is no other channel through which the products have previously been offered for sale and/or sold at the false reference price, (c) the reference prices Defendant advertised in connection with its products necessarily cannot be former prices or prevailing market prices because Defendant sells its custom products only on its website and thus, the items were never sold elsewhere for any other prices besides the falsely discounted sale prices at which customers bought items from Defendant, and (d) Defendant falsely represents its products as on sale for limited time when in truth a new equivalent sale is instituted after the expiration of an existing sale.

102. In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the reference prices advertised and published on the website were not, in fact, prices at which Defendant's items were listed or sold in the recent past for a reasonably substantial period of time, but in reality, Defendant's products never were offered or sold at the advertised reference prices. Defendant also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

103. Plaintiff and the class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the class's reliance was a substantial factor in causing them harm.

104. Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items he purchased from Defendant or, at the very least, would not have paid as much for the items as he ultimately did.

105.   Plaintiff, through counsel, has sent notice to Defendant pursuant to Cal. Civ. Code § 1782(a) on September 22, 2023 via certified mail with a courtesy email copy to support@icanvas.com and privacy@icanvas.com, but the 30-day response period has not elapsed. Thus, Plaintiff claims no damages pursuant to this count, but will timely amend this Complaint after expiration of the response period to seek money damages and punitive damages under the CLRA.  At this time, Plaintiff seeks only injunctive or other equitable relief under the CLRA as described above.

## FOURTH CAUSE OF ACTION

## FRAUD (INTENTIONAL MISREPRESENTATION AND CONCEALMENT)

### (On Behalf of the California Class)

106.   Plaintiff restates the preceding allegations as if set forth herein.

107.   Plaintiff pleads this claim under California law.

108.   Defendant made false or misleading statements of fact concerning the existence of and the amounts of price reductions because, among other things, (a) no true price reductions existed in that Defendant's products were never previously offered for sale and/or sold at the higher reference prices for a reasonably substantial period of time, and did not have a market value at the advertised "regular" price, (b) Defendant sells its products only on its website and thus there is no other channel through which the products have previously been offered for sale and/or sold at the false reference price, (c) the reference prices Defendant advertised in connection with its products necessarily cannot be former prices or prevailing market prices because Defendant sells custom products only on its website and thus, the items were never sold elsewhere for any other prices besides the falsely discounted sale prices at which customers bought items from Defendant, and (d) Defendant falsely represents its products as on sale for limited time when in truth a new equivalent sale is instituted after the expiration of an existing sale.

109.   In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the reference prices advertised and published on their website were not, in fact, prices at which Defendant's items had sold

for in the recent past for a reasonably substantial period of time, but in reality, Defendant's products rarely (if ever) were offered or sold at the advertised reference prices. Defendant also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale.  Defendant, however, concealed this material information from consumers and the general public. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

110.  Defendant knew that its representations were false when made, or at the very least, made recklessly and without regard for their truth. Defendant knew that the items Plaintiff and the class purchased had rarely, if ever, sold at the substantially higher reference price displayed on Defendant's website in the recent past and/or in the prevailing market, and knew its sales were advertised with false expiration dates.

111.  Defendant's representations were made with the intent that Plaintiff and the class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

112.  Defendant engaged in this fraud to the Plaintiff and the Class's detriment in order to increase Defendant's own sales and profits.

113.  Plaintiff and the class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the class's reliance was a substantial factor in causing them harm.

114.  Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items he purchased from Defendant or, at the very least, would not have paid as much for the items as he ultimately did.

115.  As a direct and proximate result of the above, Plaintiff and the class have suffered damages in an amount to be proven at trial.

CLASS ACTION COMPLAINT

116.    Plaintiff and the class are also entitled to punitive or exemplary damages. Defendant, through its senior executives and officers (including Leonid Oaks and Peter Razumovskiy) undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the class. Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and the class, and also because Defendant's deceptive conduct was done with a willful and knowing disregard of the rights of Plaintiff and the class.

## FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (On Behalf of the California Class)

117.    Plaintiff restates the preceding allegations as if set forth herein.

118.    Plaintiff pleads this claim under California law.

119.    Plaintiff and the class entered into implied in fact contracts with Defendant when they placed orders for merchandise through Defendant's website.  The contracts were based on the written advertisements and product listings stating that the products had a specific regular price and were being sold at the specific discounted price.  To the extent any other agreement exists between Plaintiff and class members and Defendant, these terms are consistent with and supplement such agreement.

120.    A meeting of the minds occurred when Plaintiff submitted, and Defendant accepted, payment for a product with the shown reference price and discounted price on the product listing.

121.    Defendant breached the contract by failing to provide merchandise that had a market value equal to the regular price displayed on its website.  Defendant further breached the contract by failing to provide the agreed discount.

122.   Plaintiff provided notice of breach through counsel to Defendant on September 22, 2023 via certified mail with a courtesy email copy to support@icanvas.com and privacy@icanvas.com.

123.   Plaintiff and the class have been damaged, in an amount to be proven at trial, by paying the regular market price of the purchased products, receiving a product worth less than the represented reference price, and not receiving the specific percentage discount agreed.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT/QUASI-CONTRACT
### (On Behalf of the California Class)

124.   Plaintiff restates the preceding allegations as if set forth herein.

125.   Plaintiff pleads this claim under California law and in the alternative to his breach of implied contract claim in the event no implied contract was formed based on the represented reference price, percentage discount, and limited time sale.

126.   By its wrongful acts and omissions, Defendant was unjustly enriched at the expense of and to the detriment of Plaintiff and the Class and/or while Plaintiff and the Class were unjustly deprived. Defendant's unlawful and deceptive pricing scheme induced Plaintiff and the Class to spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

127.   On behalf of the Class, Plaintiff seeks restitution from Defendant and an order disgorging all payments and profits obtained by Defendant from its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for following relief:

    a.   Certification of this case as a class action on behalf of the proposed Class and subclasses defined above, appointment of Plaintiff as Class representative, and appointment of their counsel as Class counsel;

b.  An award to Plaintiff and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits Defendant obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

c.  An injunction ordering Defendant to cease the false advertising and unfair business practices complained of herein;

d.  An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

e.  An award of nominal, punitive, and statutory damages where available;

f.  Reasonable expenses and attorneys' fees;

g.  Pre- and post-judgment interest, to the extent allowable; and

h.  For such further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury for all claims so triable.


Dated:  October 2, 2023                    MILBERG COLEMAN BRYSON
                                           PHILLIPS GROSSMAN, PLLC


                                           By: */s/ Alexander E. Wolf*
                                           ALEXANDER E. WOLF
                                           Attorneys for Plaintiff