UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 23-8241-KK-MAAx | Date: | June 24, 2024 |
| Title: | *Tal Nelkin v. Kroto, Inc., et al.* | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Order DENYING Defendants' Motion to Dismiss or, Alternatively, Transfer [Dkt. 30]

## I.
## INTRODUCTION

The instant putative class action is currently proceeding on the Second Amended Complaint ("SAC") filed by plaintiffs Tal Nelkin and Melissa Cuevas ("Plaintiffs") and arises out of Plaintiffs' allegation that defendants Kroto, Inc. and Leonid Oks ("Defendants") engage in "misleading and unlawful pricing, sales, and discounting practices" with respect to products sold on their website. ECF Docket No. ("Dkt.") 29.

On May 23, 2024, Defendants filed a Motion to Dismiss or, Alternatively, Transfer ("Motion") pursuant to a forum selection clause contained in the Terms of Service posted on Defendants' website. Dkt. 30. On May 30, 2024, Plaintiffs filed an Opposition to the Motion. Dkt. 33. On June 6, 2024, Defendants filed a Reply. Dkt. 38.

The matter thus stands submitted. The Court finds this motion appropriate for resolution without oral argument. *See* FED. R. CIV. P. 78(b); L.R. 7-15. For the reasons set forth below, Defendants' Motion is **DENIED**.

///

///

## II.
## BACKGROUND

As alleged in the SAC, defendant Kroto, Inc. ("Kroto"), doing business as iCanvas and iCanvasArt.com, is an Illinois corporation and online retailer that sells products to consumers in California and nationwide through its website. SAC ¶ 11. Plaintiff further alleges defendant Leonid Oaks is the former CEO, current chairperson, and majority owner of defendant Kroto. Id. ¶ 12.

Plaintiff Cuevas is a California resident who made a purchase from Defendants' website in July 2023. SAC ¶ 9; dkt. 36, Declaration of Melissa Cuevas ("Cuevas Decl."), ¶¶ 2-3. Plaintiff Nelkin is a California resident who made a purchase from Defendants' website in August 2023. SAC ¶ 10; dkt. 35, Declaration of Tal Nelkin ("Nelkin Decl."), ¶¶ 2-3.

When a customer makes a purchase from Defendants' website, a link to Defendants' Terms of Service "is shown to [the customer] upon checkout."[1] Dkt. 31, Declaration of Patrick Kim ("Kim Decl."), ¶ 8. A link to Defendants' Terms of Service is also provided at the bottom of the website's homepage, in the same font color as the surrounding text. Dkt. 34, Declaration of Alexander E. Wolf ("Wolf Decl."), ¶ 2, Ex. A. Defendants' Terms of Service provide, in relevant part:

> Your use of this site shall be governed in all respects by the laws of the state of Illinois, U.S.A., without regard to choice of law provisions . . . . You agree that jurisdiction over and venue in any legal proceeding directly or indirectly arising out of or relating to this site (including but not limited to the purchase of iCanvas.com products) shall be in the state or federal courts located in Illinois.

Id. ¶¶ 7, 9, Ex. 2.

Plaintiffs "do not recall seeing" any "Terms of Service" or "Terms of Use" on Defendants' website and "did not click on any hyperlink containing a 'Terms of Service' or 'Terms of Use.'" Nelkin Decl., ¶ 2; Cuevas Decl., ¶ 2.

---

[1] In their Reply, Defendants provide an unauthenticated screenshot of the page containing a link to Defendants' Terms of Service, which appears to be one of several screens the customer navigates through upon checkout. See dkt. 38 at 5. The link is presented at the end of a footnote at the bottom of the screen, below a "SAVE & CONTINUE" button. See id. The footnote text is in a smaller font size than the preceding text, and the Terms of Service – identified as "Terms" – are in a blue font and underlined. See id.

As an initial matter, a court generally will not consider evidence submitted for the first time in reply when the opposing party has not had an opportunity to respond. In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 955 (C.D. Cal. Feb. 23, 2015). Moreover, Defendants failed to (1) authenticate the screenshot, or (2) present evidence establishing the screenshot depicts the checkout page as it was shown to Plaintiffs in July and August 2023. See FED. R. EVID. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Nevertheless, because consideration of the screenshot does not alter the Court's analysis, as discussed below, the Court will address this improperly submitted evidence.

In the instant Motion, Defendant requests the Court transfer this action to the United States District Court for the Northern District of Illinois pursuant to the forum selection clause contained in their Terms of Service.  Dkt. 30.

In their Opposition, Plaintiffs argue Defendants have not established Plaintiffs had notice of Defendants' Terms of Service and, therefore, the Terms of Service do not constitute a valid contract.  Dkt. 33 at 8-13.  Plaintiffs further argue transfer pursuant to 28 U.S.C. § 1404(a) is improper because the private and public interests at stake weigh against transferring venue.  Id. at 14-17.

## III.
## DISCUSSION

### A.   DEFENDANTS' TERMS OF SERVICE DO NOT CONSTITUTE A VALID CONTRACT BETWEEN PLAINTIFFS AND DEFENDANTS

#### 1.   Applicable Law

Generally, when a contract between the parties to an action contains a valid forum selection clause, the forum selection clause should be "given controlling weight[.]"  Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 63 (2013).  However, "[b]efore the court may consider the impact of any forum selection clause . . . , it must first determine whether a contract exists[.]"  Trendsettah USA, Inc. v. Swisher Int'l Inc., No. SACV 14-1664-JVS-DFMx, 2015 WL 12697653, at *2 (C.D. Cal. Feb. 3, 2015).  The party seeking to enforce a contract bears the burden of establishing the existence of the contract.  Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co., 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014); Reese v. Forsythe Mergers Grp., Inc., 682 N.E.2d 208, 213 (Ill. App. Ct. 1997).

Under both California and Illinois law, contract formation requires mutual assent to the terms of the agreement, manifested by words or conduct.  Patrick v. Running Warehouse, LLC, 93 F.4th 468, 476 (9th Cir. 2024); Sgouros v. TransUnion Corp., 817 F.3d 1029, 1034 (7th Cir. 2016).  In the context of online agreements, courts distinguish between "clickwrap" agreements – which require the user to click on a box or button indicating their assent to a website's terms of use – and "browsewrap" agreements, where a website's terms of use are posted on the website but the user is not required to manifest assent to such terms.  Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175-76 (9th Cir. 2014).  Thus, under a browsewrap agreement, the user is deemed to assent to a website's terms of use simply by visiting or using the website.  Id. at 1176.

Both California and Illinois law provide a browsewrap agreement is valid only where the user has actual or constructive notice of the terms of the of the contract.  Long v. Provide Com., Inc., 245 Cal. App. 4th 855, 862-63 (Cal. Ct. App. 2016); Ambrosius v. Chi. Athletic Clubs, LLC, 203 N.E.3d 239, 251 (Ill. App. Ct. 2021).  Constructive notice exists where "the website puts a reasonably prudent user on inquiry notice of the terms of the contract."  Nguyen, 763 F.3d at 1177; accord. Long, 245 Cal. App. 4th at 863; Van Tassell v. United Mktg. Grp., LLC, 795 F. Supp. 2d 770, 790-91 (N.D. Ill. 2011); Sgouros, 817 F.3d at 1034-35.  In determining whether a reasonably prudent user would have inquiry notice of a browsewrap agreement, courts consider factors such as the conspicuousness and placement of the link to the terms at issue, other notices given to users of

the terms of use, and the website's general design.  Nguyen, 763 F.3d at 1177.  A browsewrap agreement is unenforceable "[w]here the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it[.]"  Id.

**2.     Analysis**

Here, the Court finds Defendants' Terms of Service do not constitute a valid contract between Plaintiffs and Defendants and, thus, the forum selection clause contained therein is unenforceable against Plaintiffs.

As an initial matter, the parties dispute whether California or Illinois law applies with respect to the issue of contract formation.  See dkt. 30 at 6; dkt. 33 at 8-10.  However, under both California and Illinois law, Defendants' Terms of Service fail to give rise to a valid contract.  Hence, the Court declines to decide which state's law governs for purposes of the instant Motion.

Under both California and Illinois law, Defendants' Terms of Service do not constitute a valid contract between Plaintiffs and Defendants, because Defendants have not demonstrated Plaintiffs had actual or constructive notice of the Terms of Service posted on Defendants' website.[2]  See Long, 245 Cal. App. 4th at 862-63; Ambrosius, 203 N.E.3d at 251.  With respect to actual notice, Plaintiffs have presented evidence they "do not recall seeing" any "Terms of Service" or "Terms of Use" on Defendants' website and "did not click on any hyperlink containing a 'Terms of Service' or 'Terms of Use.'"  Nelkin Decl., ¶ 2; Cuevas Decl., ¶ 2.  Defendants have not offered any evidence to the contrary.  See dkts. 30, 38.  Hence, Defendants fail to establish Plaintiffs had actual notice of the Terms of Service.

In addition, with respect to constructive notice, Defendants fail to establish a reasonably prudent user would have inquiry notice of the Terms of Service.  See Nguyen, 763 F.3d at 1177.  The Terms of Service appear to have been linked in two locations on Defendants' website: at the bottom of the homepage, Wolf Decl., ¶ 2, Ex. A, and upon checkout when a customer makes a purchase, Kim Decl., ¶ 8.  However, the link to Defendants' Terms of Service that is "buried at the bottom of the [home]page" is insufficient to provide reasonable notice of the Terms of Service.  See Nguyen, 763 F.3d at 1177; see also Byars v. Goodyear Tire & Rubber Co., 654 F. Supp. 3d 1020, 1026 (C.D. Cal. 2023) (finding browsewrap agreement unenforceable where link to defendant's terms of use was found at bottom of webpage and defendant "provide[d] no argument suggesting [user] had any reason to scroll to the bottom of the webpage").  Likewise, the link to Defendants' Terms of Service that is presented to a customer upon checkout is insufficient to provide reasonable notice of the Terms of Service.  First, this link only appears at the end of a footnote, and the footnote is located at the bottom of what appears to be one of several screens a customer navigates through upon checkout.  See dkt. 38 at 5; cf. Hubbert v. Dell Corp., 835 N.E.2d 113, 118 (Ill. App. Ct. 2005) (finding browsewrap agreement enforceable where hyperlink to defendant's terms and conditions of sale was contained on all five pages required to complete purchase, and last three pages additionally included a statement providing all sales were subject to such terms and conditions).  Second, the text of the footnote containing the link is a smaller font size than the

---

[2] It is undisputed the Terms of Service posted on Defendants' website constitute a browsewrap agreement, because Plaintiffs were not required to click on a box or button indicating their assent to the Terms of Service.  See dkt. 30 at 7; dkt. 33 at 12; dkt. 38 at 4-5.

preceding text.  See dkt. 38 at 5; see also Berman v. Freedom Fin. Network, 30 F.4th 849, 856-57 (9th Cir. 2022) (finding browsewrap agreement unenforceable where "[t]he text disclosing the existence of the terms and conditions . . . [wa]s printed in a tiny gray font considerably smaller than the font used in the surrounding website elements" and "[t]he comparatively larger font used in all of the surrounding text naturally direct[ed] the user's attention everywhere else").  Finally, while the link to the Terms of Service appears in blue, underlined font, the link is identified simply as "Terms," with no explanation of what the "Terms" are and no reference to the fact such "Terms" are binding on all website users.  See dkt. 38 at 5; see also Berman, 30 F.4th at 858 (finding browsewrap agreement unenforceable in part because websites at issue failed to "explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement"); Van Tassell, 795 F. Supp. 2d at 793 (finding browsewrap agreement unenforceable in part because website "lack[ed] any reference to the existence of the Conditions of Use or that they are binding on all users of the website outside of the Conditions of Use themselves").  In sum, Defendants' link to unspecified "Terms" – presented on a single checkout screen at the end of a footnote that appears in a smaller font size than the preceding text – is insufficient to provide reasonable notice.  Hence, Defendants fail to establish Plaintiffs had constructive notice of the Terms of Service.

Accordingly, because Defendants have not demonstrated Plaintiffs had actual or constructive notice of the Terms of Service posted on Defendants' website, these Terms of Service do not constitute a valid contract.  Defendants, thus, have not satisfied their burden of establishing the existence of a valid forum selection clause.

**B.     THE SECTION 1404(a) FACTORS WEIGH AGAINST TRANSFERRING THE INSTANT ACTION**

**1.     Applicable Law**

Under 28 U.S.C. § 1404(a) ("Section 1404(a)"), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Section 1404(a) "is intended to place discretion in the district court[s] to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted).  A court weighs multiple factors in determining whether to transfer an action pursuant to Section 1404(a), including "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th Cir. 2000).

The party seeking to transfer venue bears the burden of showing that convenience and justice require transfer.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979); see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 943 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

### 2. Analysis

Here, the Section 1404(a) factors weigh against transferring the instant action to the United States District Court for the Northern District of Illinois. First, Plaintiffs' choice of forum and the parties' respective contacts with the forum state weigh against transferring venue, because Plaintiffs are California residents who seek to represent a California putative class, and defendant Kroto sells its products to consumers in California. SAC ¶¶ 9-11; see also Lax v. Toyota Motor Corp., 65 F. Supp. 3d 772, 778 (N.D. Cal. 2014) (finding parties' "significant contacts with the forum related to the claims in the Complaint give weight to plaintiff's choice of forum, despite the fact that this is a class action"). Additionally, there is no indication that Plaintiff engaged in forum shopping. See Urista v. Wells Fargo & Co., No. 20-CV-01689-H-AHG, 2020 WL 7385847, at *3 (S.D. Cal. Dec. 16, 2020) (finding plaintiff's choice of forum for class action was entitled to deference where there was no evidence plaintiff engaged in forum shopping) (internal quotation marks and brackets omitted). Second, this case involves California statutory claims, with which this Court is likely to be more familiar. See id. (finding "governing law" factor weighed against transfer because case "primarily deal[t] with California law, with which this Court is likely to be more familiar"). Third, this action arises from Defendants' alleged misleading online retail practices, and Defendants fail to demonstrate with particularity any relevant evidence is located in the Northern District of Illinois. See Lax, 65 F. Supp. 3d at 778 (finding "ease of access" factor neutral because, in a case "where electronic discovery is the norm[,]" information is "portabl[e]"); Eclipse IP LLC v. Volkswagen Grp. of Am., Inc., No. EDCV 12-2087-PSG-SPx, 2013 WL 9935572, at *6 (C.D. Cal. May 10, 2013) (finding "location of evidence" factor neutral because defendant "failed to provide the Court with particular information about the evidence purportedly located in the transferee district"). Finally, other factors, such as convenience of witnesses and differences in litigation costs, are neutral or merit little weight. See Getz v. Boeing Co., 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008) (finding the "convenience of the witnesses" factor did not "weigh heavily in either party's favor" as "[n]either party ha[d] identified any non-party witnesses who reside in either [forum]"); Avrin v. Mentor Worldwide LLC, No. SACV 23-2278-CJC-ADSx, 2024 WL 493417, at *2 (C.D. Cal. Feb. 7, 2024) (finding "costs of litigation" factor neutral because "there are not likely significant cost differences between litigating a case in California" versus other states). Hence, overall, the Section 1404(a) factors weigh against transferring venue.

Accordingly, Defendants have not satisfied their burden of establishing convenience and justice require transfer of this action. See Commodity Futures Trading Comm'n, 611 F.2d at 279; Decker Coal, 805 F.2d at 943. Defendants' Motion is, therefore, **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, or Alternatively, Motion to Transfer is **DENIED**.

**IT IS SO ORDERED.**