ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California, 90212
Tel: 872-365-7060

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAL NELKIN and MELISSA CUEVAS, individually and on behalf of all similarly situated persons, <br><br>       Plaintiffs, <br><br>  v. <br><br> KROTO INC. d/b/a iCanvas and iCanvasArt; and LEONID OKS, <br><br>       Defendants. | Case No. 2:23-cv-08241-KK-MAA <br><br> **UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** <br><br> Date: Thursday, March 27, 2025 <br> Time: 9:30 a.m. <br> Dept.: 3 |

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, March 27, 2025 at 9:30 a.m., or as soon thereafter as this matter may be heard at the George E. Brown, Jr. United States Courthouse, 3470 12th Street, 3rd Floor, Courtroom 3, Riverside, CA 92501, before the Honorable Kenly Kiya Kato, Plaintiffs Tal Nelkin and Melissa Cuevas (collectively, "Plaintiffs") respectfully move this Court for final approval of the class action Settlement reached in this case, an award of $195,000 in combined attorneys' fees and costs, and a $5,000 service award to each of the two Plaintiffs,

Specifically, Plaintiffs request that the Court (1) enter the proposed Final Approval Order and Final Judgment, (2) finally approve the Settlement, (3) finally certify the Settlement Class for settlement purposes, appointing Plaintiffs as Class Representatives and their counsel as Class Counsel, (4) award Class Counsel $195,000 in combined attorneys' fees and costs, (5) and award each of the two Plaintiffs a $5,000 service award.

This motion is based on the Notice of Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement (Dkt. 54-1), the concurrently filed Declaration of Alexander E. Wolf, the previously-filed Declaration of Tal Nelkin (Dkt. 55), the previously-filed Declaration of Melissa Cuevas (Dkt. 56), the pleadings, records, and other filings in the case, and other such matters and argument as the Court may consider at the hearing of this motion.

Dated:  February 26, 2025

MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC

By: */s/ Alexander E. Wolf* _____
ALEXANDER E. WOLF
Attorneys for Plaintiffs

i

# TABLE OF CONTENTS

I.    INTRODUCTION. ...................................................................................1

II.   LITIGATION BACKGROUND. .............................................................2

III.  THE SETTLEMENT AGREEMENT. ......................................................3

    A.    The Settlement Class. ...................................................................3

    B.    Injunctive Relief and Remedial Measures. ..................................4

    C.    Limited Release of Claims for Injunctive Relief Only. .......................4

    D.    Proposed Attorneys' Fees, Litigation Expenses, and Service Award..5

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL. .........................5

    A.    Standards for Final Settlement Approval. ............................................5

    B.    The Settlement Was Negotiated at Arm's Length. ...........................7

    C.    The Recommendations of Experienced Counsel Favors Approval. ....7

    D.    The Proposed Settlement is Reasonable. ............................................7

    E.    The Stage of the Litigation Favors Approval......................................9

    F.    No Governmental Participant.............................................................10

    G.    Notice to the Settlement Class Was Not Required. ...........................10

V.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE FOR SETTLEMENT PURPOSES...................................11

VI.   THE REQUESTED ATTORNEYS' FEE AWARD IS REASONABLE. ...14

    A.    Attorneys' Fees Are Authorized by Agreement.................................15

    B.    Class Counsel's Hours are Reasonable. .............................................15

    C.    Class Counsel's Hourly Rates are Reasonable. .................................16

    D.    Class Counsel's Negative Lodestar Multiplier Reinforces the Reasonableness of the Requested Fees. .............................................17

VII.  THE REQUESTED EXPENSES SHOULD BE REIMBURSED..............18

VIII. THE REQUESTED SERVICE AWARDS ARE REASONABLE. ............19

IX.   CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Abdeljalil v. GE Capital Corp.*,
  306 F.R.D. 303 (S.D. Cal. 2015)................................................................. 12

*Ahmed v. HSBC BANK USA*,
  2019 WL 13027266 (C.D. Cal. Dec. 30, 2019) .......................................... 19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 .................................................................................................. 11

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................................ 14
  297 F.R.D. 431 (E.D. Cal. 2013) ................................................................ 13

*Beltran v. Olam Spices & Vegetables Inc.*,
  2021 WL 2284465 (E.D. Cal. June 4, 2021) ................................................ 7

*Chambers v. Whirlpool Corp.*,
  214 F. Supp. 3d 877 (C.D. Cal. 2016) ........................................................ 12

*Chan v. Sutter Health Sacramento Sierra Region*,
  2016 WL 7638111 (C.D. Cal. June 9, 2016) .............................................. 11

*Children's Hosp. & Med. Ctr. v. Bonta*,
  97 Cal.App.4th 740 (2002) .......................................................................... 16

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................................ 18

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)......................................................................... 6

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)....................................................................... 7

*Davis v. City of San Diego*,
  106 Cal.App.4th 893 (2003) ........................................................................ 16

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)........................................................................ 13

*Farrar v. Workhorse Grp., Inc.*,
  2023 WL 5505981 (C.D. Cal. July 24, 2023) ............................................. 19

*Ferrell v. Buckingham Property Management*,
  2022 WL 224025............................................................................................ 18

*Fischel v. Equitable Life Assurance Soc'y*,
  307 F.3d 997 (9th Cir. 2002)........................................................................ 14

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ............................................. 17

*Fox v. Vice*,
   563 U.S. 826 (2011) ............................................................................................ 16

*Grant v. Capital Mgmt. Servs., L.P.*,
   2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ................................................. 9

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................... 14, 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................... 7, 17

*In re Capacitors Antitrust Litig.*,
   2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ......................................... 19

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002) ............................................................. 13

*In re MacBook Keyboard Litig.*,
   2023 WL 3688452 (N.D. Cal. May 25, 2023) ......................................... 17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..................................................................... 9

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..................................................................... 6

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................... 7

*In re Tobacco Cases II*,
   240 Cal. App. 4th 779 (2015) .................................................................... 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 4212811 (N.D. Cal. July 22, 2020) ......................................... 19

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ..................................................................... 18

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) ............................................................................ 16

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal. App. 4th 170 (2007) .................................................................. 15

*Kline v. Dymatize Enterprises, LLC*,
   2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) ............................. 7, 8, 9, 11

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................... 8

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................... 8

*LaGarde v. Support.com, Inc.*,
   2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ........................................ 10

*Laguna v. Coverall North America*,
   753 F.3d 918 (9th Cir. 2014) ................................................................... 14

*Lilly v. Jamba Juice Co.*,

iv

2015 WL 1248027 (N.D. Cal. March 8, 2015) ............................................ 10

*Lilly v. Jamba Juice Co.*,
2015 WL 2062858 (N.D. Cal. May 4, 2015) ............................................... 9

*Lloyd v. Navy Fed. Credit Union*,
2019 WL 2269958 (S.D. Cal. May 28, 2019) ..................................... 12, 19

*Lyon v. United States Immigration & Customs Enforcement*,
300 F.R.D. 628 (N.D. Cal. 2014) ............................................................. 11

*Mangold v. Calif. Public Utilities Comm'n*,
67 F.3d 1470 (9th Cir. 1995) .................................................................... 15

*Matheson v. T-Bone Rest., LLC*,
2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) .......................................... 10

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2019 WL 343472 (N.D. Cal. Jan. 28, 2019) .............................................. 9

*Munoz v. BCI Coca-Cola Bottling Co. of L.A.*,
186 Cal.App.4th 399 (2010) ..................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...................................................................... 6

*OWLink Tech., Inc. v. Cypress Tech. Co.*,
2023 WL 9061081 (C.D. Cal. Dec. 12, 2023) ......................................... 17

*Padilla v. Whitewave Foods Co.*,
2021 WL 4902387 (C.D. Cal. July 15, 2021) ............................................ 5

*Padilla v. Whitewave Foods Co.*,
2021 WL 4902398 (C.D. Cal. May 10, 2021) .......................................... 11

*Parkinson v. Hyundai Motor America*,
796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................................... 15

*Real v. Y.M.I. Jeanswear, Inc.*,
2017 WL 11675686 (C.D. Cal. Sept. 1, 2017) ........................................... 4

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) .................................................................. 13

*Stathakos v. Columbia Sportswear Co.*,
2018 WL 582564 (N.D. Cal. Jan. 25, 2018) ............................................ 11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................... 6, 14

*Steiner v. Am. Broad. Co.*,
248 F. App'x 780 (9th Cir. 2007) ............................................................. 18

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ............................................ 12

*United States v. Odessa Union Warehouse Co-op*,
833 F.2d 172 (9th Cir. 1987) .................................................................... 14

*Van Vranken v. Alt. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .......................................................... 18

v

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002).......................................................................... 15, 18
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 10, 12
*Webb v. Board of Educ.*,
   471 U.S. 234 (1985) ............................................................................................. 16
*Yamada v. Nobel Biocare Holding AG*,
   825 F.3d 536 (9th Cir. 2016).............................................................................. 17

Statutes

28 U.S.C. § 1715(b) ................................................................................................ 10
Bus. & Prof. Code § 17200 ....................................................................................... 2
Bus. & Prof. Code § 17500 ....................................................................................... 2
Cal. Bus. & Prof. Code § 17501 ............................................................................... 4
Cal. Civ. Code § 1750 ............................................................................................... 2
Cal. Civ. Code § 1780(d) ........................................................................................ 19
Cal. Civ. Code § 1780(e) ........................................................................................ 15

Rules

Fed. R. Civ. P. 23 ...........................................................5, 6, 11, 12, 13, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

On January 16, 2025, the Court preliminary approved the proposed injunctive relief Settlement[1] between Plaintiffs Tal Nelkin and Melissa Cuevas and Defendants Kroto Inc. and Leonid Oks. Dkt. 65. The Court found that the Settlement was reached following meaningful discovery and investigation conducted by Plaintiffs, is the result of serious, informed, adversarial, and arm's-length negotiations between the Parties, and its terms are in all respects fair, adequate, and reasonable. *Id.* ¶ 3.

Plaintiffs brought this action on behalf of themselves and all similarly situated persons alleging the advertised discounts on Defendants' e-commerce website were deceptive. Plaintiffs' central claim is that the advertised reference prices were not former or regular prices charged on the website, and thus were misleading. The Settlement directly addresses this core issue—i.e., a stipulated injunction requiring Defendants to conspicuously define and explain the reference price, and eliminate the potential for consumer confusion. Ex. 1 ¶ 3. This change was obtained after extensive arm's length negotiations, motion practice, and mediation with an experienced neutral. In exchange, class members will only release their claims for injunctive relief without waiving any right to money damages. Given the scope and breadth of this injunctive relief, and tailored release, Plaintiffs respectfully submit the benefits of this settlement outweigh the risks of continued litigation, and the Settlement merits final approval.

Plaintiffs also respectfully seek an award of (1) $195,000 in combined attorneys' fees and costs (specifically, $185,410.42 in attorneys' fees and $9,589.58 in costs), and (2) a $5,000 service award to each of the two Plaintiffs. Class Counsel submit that the

---

[1] The Settlement Agreement is attached to the Declaration of Alexander E. Wolf in support of Motion for Final Approval ("Wolf Decl.") as **Ex. 1**.  All "Ex." references are to the Wolf Decl. Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement.

requested awards fairly compensate Class Counsel for their efforts and for the Class Representatives' service on behalf of the Settlement Class.

## II.    LITIGATION BACKGROUND.

Defendant Kroto Inc. is a small business online retailer of wall art products through www.iCanvas.com, and Defendant Leonid Oks is its founder and former CEO. Second Amended Class Action Complaint ("SAC") (Dkt. 29) ¶¶ 11-12, 16-20. Plaintiffs are California residents who purchased wall art products from the website. *Id.* ¶¶ 9-10, 39-55; Dkts. 4, 23. At issue is Defendants' alleged violation of California's "prohibition on advertising non-existent sales." *Id.* ¶ 1. On the website, Defendants advertise purported sitewide sales. *E.g., id.* ¶¶ 2-4, 21-29, 42. The homepage represents that consumers receive discounts from Defendants' regular prices by offering a fixed percentage off. *Id.* ¶¶ 21-29. On individual listing pages, the regular prices are shown in "strikethrough" text with an adjacent "% off" and described as the "REG" prices. *E.g.*, *id.* ¶¶ 22-23. But the products are always or almost always offered on the website at a discount and the supposed sales are perpetual. *Id.* ¶¶ 21-29.

Based on these allegations, the Action was filed on October 2, 2023 and the operative SAC was filed on May 3, 2024. The Action alleged violations of California consumer protection statutes and common law claims, namely, the California Unfair Competition Law ("UCL") (Bus. & Prof. Code § 17200 et seq.), the California False Advertising Law ("FAL") (Bus. & Prof. Code § 17500 et seq.), the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 et seq.), misrepresentation and concealment, and unjust enrichment.

The Parties engaged in litigation over a twelve-month period. Wolf Decl. ¶ 15. During the pendency of the Action, the parties engaged in motion practice including a motion to dismiss or transfer venue and exchanged meaningful discovery. *Id*. The information produced by Defendants included historical sales data, product value comparisons, and narrative responses. *Id.* Plaintiffs, in turn, reviewed the documents and information, analyzed the law, applied the law to the facts, and aggressively pursued relief

for the Settlement Class. *Id.*

The Parties participated in a full-day private mediation on April 9, 2024 with Bruce Friedman, Esq. of JAMS in hopes of resolving the Action at an early stage. *Id.* ¶ 16. Prior to the mediation, the Parties prepared extensive mediation briefs that discussed the claims and defenses in detail and exchanged related documents and information. *Id.* Defendants vigorously asserted, throughout the Parties' discussions, that the challenged pricing is legitimate and tied to former or regular prices; that Plaintiffs and the putative class did not overpay, but underpaid comparatively to market pricing; and promoting sales or discounts is a standard practice among retailers. *Id.* ¶ 18. Defendants also denied that this case, if litigated through trial, could be maintained as a class action given a variety of individual factors, including differing SKUs and changed pricing over time. *Id.*

The Parties did not reach a settlement at mediation but continued to engage in periodic and adversarial negotiations over the following six months, until a settlement was reached on October 24, 2024. *Id.* ¶ 17. Under the Settlement, Defendants would stipulate to a mandatory injunction, and Settlement Class Members would release *only* their claims for injunctive relief. *Id.* ¶ 19.

## III.    THE SETTLEMENT AGREEMENT.

### A.    <u>The Settlement Class.</u>

The Settlement Class is defined as: "all persons in California who purchased one or more Products from www.iCanvas.com or www.iCanvasArt.com, during the Class Period, at a discount from a higher reference price. Excluded from the Settlement Class are governmental entities; counsel of record (and their respective law firms) for the Parties; Defendants and any of their parents, affiliates, subsidiaries, independent service providers and all of their respective employees, officers, and directors; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff." Ex. 1 ¶ 2.18. The "Class Period" is January 1, 2016 through the date the Preliminary Approval Order is entered (i.e., January 16, 2025). *Id.* ¶ 2.3.

### B. <u>Injunctive Relief and Remedial Measures.</u>

Under the Settlement, Defendants will provide the Settlement Class with mandatory injunctive relief by way of modifications to Defendants' e-commerce website. Ex. 1 ¶ 3. Specifically, if the advertised reference price refers to the actual or estimated price charged by competing retailers for similar (but not identical) products, then Defendants will replace the term "REG" with "Comparable Value," "Estimated Value," or another similar term. *Id.* ¶ 3.2. Further, on individual product listing pages where a strikethrough price or reference price is displayed, Defendants agree to define and explain the strikethrough price or reference price using an adjacent hyperlink entitled "Details" or similar. *Id.* ¶ 3.3. Clicking a user's mouse pointer on the hyperlink shall lead to a page explaining the meaning of the strikethrough price or reference price. *Id.* Defendants further agree that any future changes shall comply with Cal. Bus. & Prof. Code § 17501 so long as products are sold to California residents. *Id.* ¶ 3.4. And Defendants have three months from the Final Effective Date to implement the injunctive relief. *Id.* ¶ 3.5.

This injunctive relief addresses the core deceptive advertising allegations at issue. *See Real v. Y.M.I. Jeanswear, Inc.*, No. EDCV170870JGBDTBX, 2017 WL 11675686, at *3 (C.D. Cal. Sept. 1, 2017) ("An advertised discount price can be deceptive because it does not differ from the normal price, the product has rarely been sold at the putative list price, or because the alleged original price constituted a false valuation of the product.").

### C. <u>Limited Release of Claims for Injunctive Relief Only.</u>

In exchange for the injunctive relief provided by the Settlement, Settlement Class Members will release all, but *only*, claims for injunctive relief relating to the challenged advertising and pricing practices. Ex. 1 ¶ 2.15. The release does *not* cover claims for damages or monetary relief claims. The release is copied below:

> "Released Claims" means and refers to any and all right to injunctive relief, regardless of legal basis (i.e., constitutional, federal, state, local, or administrative) and on account of any and all claims, suits, obligations, or cause of actions of every kind and/or nature whatsoever, whether now known

or unknown, suspected or unsuspected, asserted or unasserted, latent or patent, at law or in equity, which any Releasing Party now has or may have, which in any way arises out of, is based on, or relates in any way to (i) the advertised discounts for the Products; (ii) the advertised comparison between the sale prices and regular prices for the Products; and/or (iii) the claims or allegations asserted in the operative Complaint filed in this Action. For clarity, the Released Claims are limited to injunctive relief and *exclude* claims to monetary relief of any kind.

*Id.* (emphasis in original).

### D. Proposed Attorneys' Fees, Litigation Expenses, and Service Award.

The Parties negotiated sums for attorneys' fees, expenses, and a service award to Plaintiffs, with the amount finally awarded by the Court not affecting the Settlement Class benefits in any way. Ex. 1 ¶¶ 4.1, 4.2. Subject to Court approval, Defendants agreed to pay $195,000 in combined attorneys' fees and costs, and a $5,000 service award to each Plaintiff. *Id*. *See Padilla v. Whitewave Foods Co*., No. 2:18-CV-09327-SB-JC, 2021 WL 4902387, at *1-3 (C.D. Cal. July 15, 2021) (granting final approval of settlement releasing claims for injunctive relief only and awarding $220,000 attorneys' fees, plus costs and service awards).

## IV. THE SETTLEMENT WARRANTS FINAL APPROVAL.

Plaintiffs respectfully submit that the Settlement represents a fair, reasonable, and practical resolution of uncertain litigation and the terms of the Settlement account for the risks and potential rewards of the claims being settled. Wolf Decl. ¶¶ 22-24.

### A. Standards for Final Settlement Approval.

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6)

the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004)).

The 2018 revisions to Rule 23 similarly provide that courts should consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Thus, Rule 23(e) now reflects the factors that courts in this Circuit already considered for settlement approval.

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003).

### B.     The Settlement Was Negotiated at Arm's Length.

As explained above, the Settlement is the product of protracted litigation following mediation with a respected mediator, Bruce Friedman of JAMS. Wolf Decl. ¶¶ 15-20. This factor weighs in favor of approval. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (the "presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness"); *Kline v. Dymatize Enterprises, LLC*, No. 15-CV-2348-AJB-RBB, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016) ("That the settlement was reached with the assistance of an experienced mediator further suggest that the settlement is fair and reasonable.").

### C.     The Recommendations of Experienced Counsel Favors Approval.

This factor weighs in favor of approval where, as here, the Settlement has the support of experienced counsel. *See Beltran v. Olam Spices & Vegetables Inc.*, 2021 WL 2284465, at *14 (E.D. Cal. June 4, 2021) (views of counsel experienced in litigation's subject matter weigh in favor of approval).

Plaintiffs are represented by a respected and skilled law firm that possesses vast collective experience in consumer class action lawsuits, like this action. Wolf Decl. ¶¶ 2-13. Defendants, similarly, are represented by a prominent and highly experienced defense firm, Dickinson Wright PLLC. Plaintiffs' and Defendants' Counsel support the Settlement, and it is their informed opinion that, given the uncertainty and substantial expense of pursuing claims through trial, the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. *Id.* Therefore, the support of counsel for this settlement weighs in favor of its approval.

### D.     The Proposed Settlement is Reasonable.

The Ninth Circuit has adopted a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("strong judicial policy . . . favors settlements"). Following an investigation of the claims and conduct alleged in the SAC (including review of documents and information produced by

7

Defendants), and considering the risks ahead, Plaintiffs and Plaintiffs' Counsel believe the terms of the proposed Settlement are fair and in the best interests of the Settlement Class. Wolf Decl. ¶¶ 22-24.

The risk to Plaintiffs of continued litigation is considerable. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (discussing in detail the complexity of estimating damages in cases where the harm arises from deceptive advertising). Defendants have denied and continue to deny any and all allegations of wrongdoing and liability. *Id.* ¶ 18. While both sides believe in the merits of their respective positions, alleged false reference pricing cases are notoriously unpredictable. Litigating these cases through class certification and trial requires expert testimony, and the parties' competing experts are almost always in disagreement on the facts and standards. Beyond the merits, if this case were to resume without a settlement, Defendants would argue that a litigation class should not be certified based on individualized issues as to the variation in products, pricing, and alleged damages. Even if the class were certified, there remains the possibility of decertification following trial and lengthy appeals. These considerations favor settlement. *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (approving false discounting settlement where "[c]ase law suggests that plaintiff would have faced challenges in continuing to litigate" and "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."); *Kline v. Dymatize Enterprises, LLC*, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016) ("[W]hile confident in the merits of their case, Plaintiffs are cognizant of the inherent risks of lengthy litigation. Defendant adamantly denies liability and Plaintiffs' ability to obtain class certification. The proposed settlement adequately accounts for these risks.").

Against this backdrop, the Settlement is in the best interests of the Settlement Class. Injunctive relief is the "primary form of relief under the UCL." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 337 (2011). Injunctive relief settlements are also common and favored where, as here, individual class members are not releasing their claims for

money damages and the injunctive relief addresses the allegedly unlawful practices. *E.g.,* *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *3-4 (N.D. Cal. Jan. 28, 2019) ("Although class members do not receive monetary relief as a result of the settlement, the case was only certified for injunctive relief purposes and class members are free to bring individual damages claims. Accordingly, this factor weighs in favor of approving the settlement."); *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *2-4 (N.D. Cal. May 4, 2015) (approving injunctive relief settlement forcing juice-seller to repackage challenged products, omitting allegedly deceptive "all natural" labeling).

Stated differently, "[w]hile the class will not receive monetary compensation," the class is not releasing any claims for money damages and "the proposed settlement provides significant injunctive relief" such that settlement approval is warranted. *Kline v. Dymatize Enterprises, LLC*, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016) (approving injunctive relief only class settlement). And as explained in *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014):

> [The injunction] stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking legal recourse. Other courts have approved similar settlements providing solely injunctive relief, attorneys' fees, costs, and damages to named plaintiffs.

*Id.*, at *4.

In sum, though Plaintiffs believe in the merits of their case, settlement here avoids significant uncertainty while ending the challenged conduct without sacrificing any Settlement Class member's right to pursue damages. These considerations weigh in favor of final approval.

### E.    The Stage of the Litigation Favors Approval.

Even where a settlement is reached at a relatively early stage, approval is warranted where the consideration is commensurate with the release. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed

9

decision about settlement."); *see also Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange with no depositions because "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims" and "[t]he parties' participation in a day-long mediation allowed them to further explore the claims and defenses").

Here, the litigation reached a stage whereby Plaintiffs' counsel had sufficient information to evaluate the merits of the claims asserted. Wolf Decl. ¶ 19. The exchange of informal and formal discovery and legal argument, prior to, during, and after the mediation, permitted an informed assessment of the case. *Id*. ¶¶ 14-20. This thoroughness and consistently adversarial posture favors final approval.

## F.    <u>No Governmental Participant.</u>

No governmental agency is involved in this litigation, but the Attorney General of the United States and California were notified of the proposed Settlement in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). Wolf Decl. ¶ 29. To date, no governmental entity has objected to the Settlement. This further supports final approval of the Settlement. *See LaGarde v. Support.com, Inc*., No. C 12-0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) (noting that CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures").

## G.    <u>Notice to the Settlement Class Was Not Required.</u>

Generally, settlement class members are entitled to receive the best notice practicable and an opportunity to object or opt-out. But an injunctive relief settlement under Rule 23(b)(2) neither requires that absent class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice."). *See also Lilly v. Jamba Juice Co*., 2015 WL 1248027, *8-9 (N.D.

Cal. March 8, 2015) (class notice not necessary in a Rule 23(b)(2) settlement regarding product labeling changes); *Lyon v. United States Immigration & Customs Enforcement*, 300 F.R.D. 628, 635 (N.D. Cal. 2014) ("[I]n a Rule 23(b)(2) class action, notice may be given but is not required, and there is no requirement that a class member be given an opportunity to exclude himself or herself from the lawsuit."); *Chan v. Sutter Health Sacramento Sierra Region*, 2016 WL 7638111, at *14 (C.D. Cal. June 9, 2016) (declining to require notice when "the Class Members' rights [would] not be prejudiced by the Settlement Agreement").

Indeed, courts regularly approve injunctive relief-only settlements without formal notice to the class. *See, e.g., Padilla v. Whitewave Foods Co*., No. 2:18-CV-09327-SB-JC, 2021 WL 4902398, at *4 (C.D. Cal. May 10, 2021) (granting preliminary approval of injunctive relief only settlement and holding no class notice required); *Stathakos v. Columbia Sportswear Co*., No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) (granting settlement approval and stating: "In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required.") (collecting cases); *Kline*, 2016 WL 6026330, at *6 (approving injunctive relief only class settlement and choosing to "not direct notice because the settlement does not alter the unnamed class members' legal rights.").

Thus, at the Parties' request, the Court did not require notice to Settlement Class in granting preliminary approval. Dkt. 65 ¶¶ 13-14. Settlement of the instant case will not prejudice absent Settlement Class Members who, as discussed above, retain their rights to sue for any damages they may have incurred from the alleged practices. Settlement Class Members only waive injunctive relief that seeks to redress the practices at issue here—which are adequately remedied by this Settlement.

## V.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE FOR SETTLEMENT PURPOSES.

Parties seeking class certification for settlement purposes must satisfy the requirements of Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

(1997). All the requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

The Court certified the Settlement Class for settlement purposes at the preliminary approval stage, finding the requirements of Rule 23 satisfied. Dkt. 65 ¶¶ 6-9. Having already found that the proposed Settlement Class meets the requirements for class certification, the Court may finally certify the Settlement Class for the same reasons set forth in its Preliminary Approval Order. *See, e.g., Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (finally certifying settlement class "[b]ecause the circumstances have not changed" since preliminary approval); *Lloyd v. Navy Fed. Credit Union*, 2019 WL 2269958, at *8 (S.D. Cal. May 28, 2019) ("The Court previously certified the Settlement Class under Rule 23(a) and 23(b)(3) in its order granting Plaintiffs' unopposed motion for preliminary approval" and "[t]he Settlement Class remains the same for the purposes of the present motion for final approval. Accordingly, the Court affirms its prior determination that the Settlement Class satisfies Rule 23's class certification requirements.") (citations omitted).

The Rule 23 factors are nevertheless addressed briefly below.

***Numerosity.*** There are well over 10,000 Settlement Class members in California. Wolf Decl. ¶ 26. Thus, the Settlement Class is sufficiently numerous. *See Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2015) ("Based on the record presented, it is clearly reasonable that at least 40 class members or more can be identified from defendant's 340 million account holders."); *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, 2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016) (noting this requirement is "relaxed" where the class seeks injunctive relief only).

***Commonality.*** For purposes of settlement, the proposed Settlement Class's claims all stem from the same factual circumstances, specifically that Settlement Class members purchased one or more Products at an advertised discount during the Class Period. Ex. 1 ¶¶ 2.14, 2.18.

***Typicality.*** "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). Here, Plaintiffs are members of the class they seek to represent, and suffered the same harm alleged. Thus, Plaintiffs satisfy the typicality requirement because their claims and the Settlement Class members' claims arise from the same set of operative facts and circumstances concerning the Products.

***Adequacy.*** Plaintiffs have fairly and adequately protected the interests of the Settlement Class because they possess the same interests and suffered the same alleged injury as the Settlement Class. Wolf Decl. ¶ 47; Dkt. 55 (Nelkin Decl.) ¶¶ 3-6; Dkt. 56 (Cuevas Decl.) ¶¶ 3-6. Further, Plaintiffs retained counsel with experience and expertise in litigating consumer class actions, and counsel dutifully pursued this litigation to obtain important relief on behalf of the Settlement Class. Wolf Decl. ¶¶ 2-13 & Ex. 2 (firm resume). *See also In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (in evaluating adequacy of representation, court may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013) ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

***Rule 23(b)(2).*** In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under Rule 23(b)(1), (2) or (3). An action is maintainable as a class action if, among other things, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). *See also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (Rule 23(b)(2) satisfied where plaintiffs "complain

of a pattern or practice that is generally applicable to the class as a whole."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (noting that subsection (b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief").

Here, Plaintiffs allege that Defendants have acted in a way common to the entire Settlement Class and request injunctive relief to correct the alleged violations. Defendants have agreed to the injunction and, therefore, Plaintiffs need not conclusively prove that Defendants violated California law in order to obtain injunctive relief. *See United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987) (the court may infer from a defendant's past violations that "future violations are likely to occur"). Of course, without an injunction, Defendants may continue to advertise and sell the Products while omitting the enhanced disclosures and changed marketing language provided by the Settlement.

## VI.    THE REQUESTED ATTORNEYS' FEE AWARD IS REASONABLE.

Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In evaluating a fee request, courts account for the fact that "the parties are compromising to avoid litigation." *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014) (vacated as moot). Accordingly, "the district court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003)). *See also Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").

A court has discretion to award attorneys' fees in a class action by applying either a lodestar methodology or a percentage-of-the-fund methodology. *See Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). Here, the Settlement does not include a common fund, but rather provides injunctive relief which benefits the

Class. As such, Class Counsel submits their requested fees are reasonable under the lodestar approach.

### A.    Attorneys' Fees Are Authorized by Agreement.

Consistent with Rule 23(h), by agreement, the Settlement authorizes an award of attorneys' fees and costs to Class Counsel "not to exceed the total aggregate sum of $195,000 to compensate them for their work on behalf of the Settlement Class." Ex. 1 ¶ 4.1.

Class Counsel are also entitled to reasonable attorneys' fees by law. "In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Here, California law governs as Plaintiffs have sued for relief under, among other things, the CLRA. And, as prevailing parties, Class Counsel are entitled to fees under the CLRA's one-way fee-shifting provision. Cal. Civ. Code § 1780(e) (courts "shall award court costs and attorneys' fees to a prevailing plaintiff in a litigation"); *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-179 (2007) ("[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement."); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (authorizing fees under CLRA when the plaintiff obtained relief sought by way of a class action settlement).

### B.    Class Counsel's Hours are Reasonable.

Class Counsel must show their hours were reasonable and necessary to the litigation. Hours are reasonable if they were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 431. In addition to time spent during litigation, reasonable hours include time spent

before the case was filed, including to interview clients, investigate facts and the law, and prepare the initial pleadings. *See Webb v. Board of Educ.*, 471 U.S. 234, 243-50 (1985) ("Most obvious examples are the drafting of the initial pleading and the work associated with the development of the theory of the case."). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Here, as detailed in the Wolf Declaration, Class Counsel spent 311.2 hours on this case through January 2025, including without limitation: (1) fact investigation, (2) legal research and analysis, (3) conferring with clients, (4) preparing for mediation and drafting a mediation brief, (5) negotiating with defense counsel, and (6) submitting the settlement to the Court for approval. Wolf Decl. ¶¶ 20, 37, 40-43. Additionally, Class Counsel endeavored to avoid duplication of efforts and have the work completed by the appropriate level of attorney. *Id.* ¶ 42.

### C. Class Counsel's Hourly Rates are Reasonable.

The reasonable market value of the attorneys' services sets the standard measure of a reasonable hourly rate. *See Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001). Courts determine the reasonable market value by examining whether the rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4th 740, 783 (2002). Rates awarded to other attorneys practicing complex class action litigation in California are appropriate guides for establishing reasonable market rates. *See Davis v. City of San Diego*, 106 Cal.App.4th 893, 904 (2003).

Here, Class Counsel's rates reflect the current market rates by attorneys of comparable experience, skill, and reputation for comparable work. Wolf Decl. ¶¶ 38-42. Class Counsel specializes in complex consumer class actions and regularly litigate cases in California state and federal courts. *Id.* ¶¶ 2-13. Moreover, courts have approved Class Counsel's requested rates and those charged by other experienced attorneys in similar class action matters. *E.g.*, *Bailey v. Rite Aid Corp.*, No. 4:18-cv-6926, ECF No. 178, at 9

16

(N.D. Cal. Dec. 16, 2022) (approving requested fees and holding that Milberg's rates were "commensurate with their experience and with the legal market"); *Julian v. TTE Technology, Inc.*, No. 20-cv-02857, ECF No. 152 (N.D. Cal. Jan. 23, 2023) (approving Milberg's rates in false advertising class action); *Koenig v. Vizio, Inc*., No. BC702266, Order Granting Preliminary Approval (Cal. Sup. Ct., Cnty. of Los Angeles, Nov. 30, 2023) (approving Milberg's rates in false advertising class action); *see also OWLink Tech., Inc. v. Cypress Tech. Co*., No. 821CV00717SPGKESX, 2023 WL 9061081, at *2 (C.D. Cal. Dec. 12, 2023) (hourly rates of $1,200 for partners and $900 for associates were reasonable); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving partner rates up to $1,195, associate rates up to $850, and paralegal rates of $325); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (hourly rates range from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates).

### D.    Class Counsel's Negative Lodestar Multiplier Reinforces the Reasonableness of the Requested Fees.

Under the lodestar method, the court multiplies the number of hours reasonably spent on litigation by a reasonable hourly rate. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016). The court may then "adjust" the award "by an appropriate positive or negative multiplier reflecting . . . the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011).

The reasonableness of a multiplier is assessed by considering the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience,

reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (noting district court found a 3.65 multiplier to be reasonable after considering the factors in *Kerr*).

Here, Class Counsel are requesting a negative (or fractional) lodestar multiplier of 0.736. Wolf Decl. ¶ 40. That is, Class Counsel are only seeking to recover $185,410.42 in attorneys' fees compared to the $251,847.50 in incurred attorneys' fees. *Id.* ¶¶ 37, 40. Where, as here, plaintiffs seek an amount in fees less than what they billed, the requested fees are generally considered reasonable. *See*, *e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (finding that, if the court is asked to apply a negative multiplier, it "suggests the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by Plaintiff's Counsel.").

Class Counsel recognize that their blended/average hourly rate of $809 may be on the higher end of approved rates. Wolf Decl. ¶ 41. However, even if the rates were reduced—and leaving aside the nationwide and specialized nature of Class Counsel's practice area—the lodestar multiplier would still be within the acceptable range. A 50% reduction of Class Counsel's average hourly rate to $405 yields a lodestar multiple of 2.0. *Id.* And, of note, "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Alt. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995). *See also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming a fee award with a 6.85 multiplier); *Ferrell v. Buckingham Property Management*, No. 119CV00332JLTBAKEPG, 2022 WL 224025, at * (E.D. Cal., Jan. 25, 2022) ("[C]ourts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and 'the multiplier of 1.9 is comparable to multipliers used by the courts.'").

## VII.   THE REQUESTED EXPENSES SHOULD BE REIMBURSED.

Out-of-pocket expenses are compensable if they would normally be billed to a fee-

paying client. "It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for 'reasonable expenses that would typically be billed to paying clients in non-continency matters,' i.e., costs 'incidental and necessary to the effective representation of the Class.'" *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (citation omitted). *See also* Cal. Civ. Code § 1780(d) (providing for costs to prevailing plaintiff in CLRA action). Reimbursable expenses include photocopies, postage, filing fees, experts, consultants, mediation fees, and travel. *Farrar v. Workhorse Grp., Inc.*, No. CV2102072CJCPVCX, 2023 WL 5505981, at *9 (C.D. Cal. July 24, 2023). *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of costs for expert fees, travel, transcripts, document management, copying, mailing and serving documents, electronic research, and filing and court fees).

Here, Class Counsel have incurred $9,589.58 in costs and expenses that would typically be billed to a paying client, with the vast majority ($9,000) attributed to the cost of mediation. Wolf Decl. ¶ 44. The expenses advanced on behalf of the Class should be reimbursed.

## VIII. THE REQUESTED SERVICE AWARDS ARE REASONABLE.

"[N]amed plaintiffs are eligible for reasonable incentive payments to compensate them for the expense or risk that they have incurred in conferring a benefit on other members to the class." *Munoz v. BCI Coca-Cola Bottling Co. of L.A.*, 186 Cal.App.4th 399, 412 (2010). "In the Ninth Circuit, a $5,000 incentive award is 'presumptively reasonable.'" *Farrar v. Workhorse Grp., Inc.*, No. CV2102072CJCPVCX, 2023 WL 5505981, at *11 (C.D. Cal. July 24, 2023); *Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2019 WL 2269958, at *15 (S.D. Cal. May 28, 2019) ("The $5,000.00 incentive award for each Class Plaintiff in this case is presumptively reasonable."); *Ahmed v. HSBC BANK USA*, No. EDCV152057FMOSPX, 2019 WL 13027266, at *7 (C.D. Cal. Dec. 30, 2019) (same).

Here, Plaintiffs have both meaningfully participated in this action. They both consulted on the drafting of, and reviewed, the operative Complaint. They gathered and provided information, and responded to requests for information, from Class Counsel. They provided information to proposed Class Counsel in the lead up to mediation and discussed the mediation and follow-up negotiations with counsel. And they have been diligent in responding to counsel and have stayed informed of the status of the action, including settlement. Wolf Decl. ¶ 47; Dkt. 55 (Nelkin Decl.) ¶¶ 3-6; Dkt. 56 (Cuevas Decl.) ¶¶ 3-6. Beyond that, Plaintiffs undertook substantial risks to their reputation in the public domain and thrust themselves into active litigation to enforce an important right for the benefit of the general public—all without any guarantee of compensation. They came forward to represent the interests of thousands of class members, with very little personally to gain, as their individual damages were marginal.

Thus, the two Class Representatives each respectfully request a $5,000 service award.

## IX.    CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully submit that the Settlement merits final approval, the requested $195,000 in attorneys' fees and costs is reasonable, and the requested service awards are reasonable.

Dated:  February 27, 2025          MILBERG COLEMAN BRYSON
                                   PHILLIPS GROSSMAN, PLLC


                                   By: */s/ Alexander E. Wolf*
                                   ALEXANDER E. WOLF
                                   Attorneys for Plaintiffs

1

## **L.R. 11-6.2 Certificate of Compliance**

2        The undersigned counsel certifies that this memorandum contains 6,716 words

3   and complies with the word limit of L.R. 11-6.1.

4

5

6   Dated:  February 26, 2025              MILBERG COLEMAN BRYSON
                                          PHILLIPS GROSSMAN, PLLC
7

8                                         By: */s/ Alexander E. Wolf*

9                                             ALEXANDER E. WOLF
                                              Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28