ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California, 90212
Tel: 872-365-7060

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAL NELKIN and MELISSA CUEVAS, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>KROTO INC. d/b/a iCanvas and iCanvasArt; and LEONID OKS,<br><br>Defendants. | Case No. 2:23-cv-08241-KK-MAA<br><br>**DECLARATION OF ALEXANDER E. WOLF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date: Thursday, March 27, 2025<br>Time: 9:30 a.m.<br>Dept.: 3 |

I, Alexander E. Wolf, declare as follows:

1. I am currently a senior associate of the law firm of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). I am one of the lead attorneys for Plaintiffs and Class Counsel for the Settlement Class. I submit this declaration in support of Plaintiffs' Unopposed to Motion for Final Approval of Class Action Settlement, Attorneys' Fees, Costs, and Service Awards. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

### **Mr. Wolf's Experience and Qualifications**

2. I am a 2014 graduate of the University of Southern California School of Law. I have been licensed to practice law in the State of California since 2014 and Texas since 2023. For the past 10+ years, my practice has focused on consumer class action litigation.

3. I joined the plaintiffs' class action bar in early 2023 after practicing for over eight years at two prominent defense firms, DLA Piper LLP and Akin Gump Straus Hauer and Feld LLP, where I represented public and private companies in consumer class actions. I also served as a contributing author for the California Unfair Competition Law and False Advertising Law chapters of Westlaw's Practical Law treatise while at DLA Piper.

4. My recent experience at Milberg includes serving as class counsel in a data privacy matter that settled for a $7.35 million non-reversionary common fund, *Young v. Military Advantage, Inc. d/b/a Military.com*, Case No. 2023LA000535 (18th Cir. DuPage Cty., Ill.), and prosecuting over a dozen consumer class actions in California and nationwide. *E.g., Kaether v. Metropolitan Area EMS Authority*, No. 342-339562-23 (Tarrant Cty., Texas) (appointed settlement class co-counsel in data breach class action); *Bustos v. Riverside Medical Clinic*, No CVRI2203466 (Cal. Sup. Ct. for Riverside Cty.) (appointed settlement class co-counsel and approval granted April 12, 2024 for $1.75 million settlement fund); *In Re: Arthur J. Gallagher Data Breach Litigation*, No. 1:22-cv-00137 (N.D. Ill.) ($21 million class settlement pending in data breach action); *Waldo v Black & Decker (U.S.) Inc.*, No. C-03-CV-24-000974 (Baltimore Cir. Ct.) (appointed

settlement class counsel and class settlement approved in false advertising class action); *Colombo v. YouTube LLC et al.*, No. 3:22-cv-06987 (N.D. Cal.) (pending privacy class action); *Odell v. CVS Pharmacy Inc.*, No. 1:22-cv-03318 (N.D. Ill.) (pending privacy class action); *Karling v. Samsara Inc.*, No. 1:22-cv-00295 (N.D. Ill.) (pending privacy class action); *Doyle v. FKA Distributing Co. LLC d/b/a HoMedics*, No. 2:23-cv-10807-SPG-SSC (C.D. Cal.) (pending false advertising class action).

5. I also have meaningful experience representing consumers in false discounting class actions like the instant matter and have a deep understanding of the claims and defenses. *E.g., Poulopoulos v. OpticsPlanet, Inc.*, No. 2:24-cv-02511-JLS-KS, 2024 WL 3822774 (C.D. Cal. Aug. 8, 2024) (denying defendant's motion to dismiss in false discounting class action); *Mitchell v. NY & Co Ecomm LLC*, No. CV2310117MWFMRWX, 2024 WL 1328333 (C.D. Cal. Mar. 26, 2024) (denying defendants' motion to dismiss in false discounting class action); *Hull v. RC Ecommerce LLC*, No. 37-2024-00023597-CU-MC-CTL (San Diego. Sup. Ct.) (appointed settlement class counsel and preliminary approval granted November 2024).

6. Additionally, while at DLA Piper, I defended against false discounting claims. *See Barr v. SelectBlinds LLC*, No. 2:22-cv-08326-SPG-PD (C.D. Cal.) (settlement approved in 2024).

7. As a former defense attorney, my experience includes counseling Apple, Danone, Chipotle, Bayer, Lufthansa and other companies across the consumer electronics, food and beverage, and hospitality sectors in false advertising, unfair competition, and data privacy matters. *E.g., Price v. Apple Inc.*, No. 4:21-cv-02846-HSG (N.D. Cal.); *Williams v. Apple Inc.*, No. 20STCV43431 (Los Angeles Sup. Ct.); *Andino v. Apple Inc.*, No. 2:20-CV-01628-JAM-AC (E.D. Cal.); *Julian v. TTE Technology, Inc. d/b/a TCL North America*, No. 3:20-cv-02857-EMC (N.D. Cal.); *Andrade-Heymsfield v. Danone US, Inc.*, No. 3:19-cv-00589-CAB-WVG (S.D. Cal.); *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-MWF-MRW (C.D. Cal.).

8. With the knowledge and experience developed as a leading defense attorney,

3

DECLARATION OF ALEXANDER E. WOLF

I believe I am qualified to successfully represent aggrieved consumers in class action litigation. I have represented both plaintiffs and defendants in more than 30 class action lawsuits in state and federal courts throughout the United States.

## **Milberg Firm Experience and Qualifications**

9. In addition to my personal qualifications, I bring the support and resources of Milberg to this case on behalf of the putative class. Milberg is among the pioneers of federal class action litigation and is recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing, repeatedly taking the lead in landmark cases that have set groundbreaking legal precedents, prompting changes in corporate governance, and recovering over $50 billion in verdicts and settlements.[1]

10. Milberg attorneys have served as Lead Counsel, Co-Counsel, or Class Counsel on hundreds of complicated and complex class actions. These cases include *Tabak v. Apple Inc.*, Case No. 4:19-cv-02455 (N.D. Cal. 2023) (appointed co-lead counsel and reaching $35 million class settlement); *In re Seresto Flea and Tick Collar Marketing, Sales Practices, and Products Liability Litigation,* Case No. 1:21-cv-04447 (N.D. Ill. 2021) (appointed co-lead counsel); and *Carder v. Graco Children's Products, Inc. et al.*, Case No. 2:20-cv-00137 (N.D. Ga. 2020) (appointed interim co-lead counsel). My firm's resume is attached as **Exhibit 2**.

11. Milberg is and has been one of the nation's most prominent class action law firms since its founding in 1965. My experience and Milberg's experience collectively compare favorably with that of any law firm in the country. The firm has ample resources (both financial and personnel, with over 100 attorneys at the firm) to fully and adequately represent the interests of the proposed class here.

12. I am, and my firm is, fully aware of the financial and human resources required to bring this case to a successful conclusion and the Court should have no

---

[1] See https://milberg.com/outstanding-recoveries/.

reservations that my firm has and is willing to commit those resources for the benefit of the Settlement Class.

13. My experience coupled with my firm's resources allowed me to skillfully litigate this type of case in the best interests of Plaintiffs and the Settlement Class.

### The Litigation and Settlement Discussions

14. On October 2, 2023, Plaintiffs filed the Action against Defendants in the United States District Court for the Central District of California, and the operative Second Amended Complaint ("SAC") was filed on May 3, 2024.[2] The Action asserted the instant claims for false and/or deceptive advertising on iCanvas.com on behalf of a putative California class. There, Defendants denied all liability or wrongdoing of any kind, and further denied that Plaintiffs or any putative class member has been damaged in any amount. Defendants continue to maintain that the challenged advertising practices are not deceptive or misleading as a matter of law.

15. The Parties engaged in litigation and negotiations over a twelve-month period relating to the facts and legal issues in the Action. During the pendency of the Action, the parties engaged in motion practice including a motion to dismiss or transfer venue and exchanged significant discovery. The information produced by Defendants included historical sales data, product value comparisons, and narrative responses. Plaintiffs, in turn, reviewed the documents and information, analyzed the law, applied the law to the facts, and aggressively pursued relief for the Settlement Class.

16. In the interest of efficiency and judicial economy, the Parties agreed to explore a potential resolution through mediation at an early stage. Prior to the mediation, the Parties prepared detailed mediation briefs that discussed the claims, defenses, and alleged damages. The Parties then participated in a full-day private mediation on April 9, 2024 with Bruce Friedman, Esq.

---

[2] All capitalized terms have the same meaning as set forth in the Settlement Agreement ("Agreement") attached as **Exhibit 1**.

5
DECLARATION OF ALEXANDER E. WOLF

17. The Parties did not reach a settlement at mediation but continued to engage in periodic and adversarial negotiations over the following six months, until a settlement was reached on October 24, 2024.

18. Defendants vigorously asserted, throughout the Parties' discussions, that the challenged pricing is legitimate and tied to former or regular prices; that Plaintiffs and the putative class did not overpay, but underpaid comparatively to market pricing; and promoting sales or discounts is a standard practice among retailers. Defendants also denied that this case, if litigated through trial, could be maintained as a class action given a variety of individual factors, including differing SKUs and changed pricing over time.

19. As a result of these lengthy, substantive, and good faith negotiations, we were able to assess thoroughly the claims of the Settlement Class Members, Defendants' marketing practices, and Defendants' defenses. Under the Settlement, Defendants stipulate to a mandatory injunction and Settlement Class Members release only their claims for injunctive relief. The Settlement Agreement is the result of arm's-length negotiations between counsel who are experienced in consumer class actions. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients.

20. In sum, the work of Class Counsel in connection with this action was significant and laborious. I and my colleagues investigated and analyzed Defendants' historical pricing and advertising, and the alleged claims, at length. This required a thorough review of Defendants' website as archived by the Internet Archive's Wayback Machine, including hundreds of pages spanning over three years. Additionally, our work involved interviewing potential clients; evaluating the potential class representatives; contributing to the evaluation of the merits of the case before filing the Complaint; conducting legal research; conducting extensive research into injuries allegedly resulting from deceptive reference pricing; conducting further research into potential damages, damages models, and class certification; drafting and filing the Complaint; litigating

against a well-regarded national law firm with extensive false advertising class action experience; obtaining information from Defendants regarding the allegations in the Complaint and the challenged advertising; participating in a formal mediation of this case; negotiating and drafting the settlement agreement, the Motion for Preliminary Approval, and this instant Motion; communicating with defense counsel; and updating and handling questions from our class representatives. I conferred with my colleagues about strategy and case status while being mindful to avoid duplicative efforts within my firm.

## The Settlement

21. Attached as **Exhibit 1** is a true and correct copy of the Settlement Agreement reached in this Action.

22. The outcome here is excellent given the risks and challenges presented by continued litigation. While Plaintiffs' Counsel is very confident in the strength of the case, Defendants raised multiple arguments regarding liability and damages, and whether a class could be certified. For example, Defendants argued that their advertising caused no injury and was not deceptive because it was a fair assessment of value in the marketplace, and a class could not be certified in part because Plaintiffs could not show classwide damages or restitution. Defendants also argued that, as a small business, their assets and financial condition preclude recovery of any seven-figure judgment. While Plaintiffs disagree with these arguments, counsel recognizes that to succeed on their claims, Plaintiffs must prevail on several substantive arguments, successfully certify a class over Defendants' objections, and win at trial. Even then, there is the possibility of appeal.

23. It is my informed opinion that the Settlement is fair, adequate, and reasonable, and the Settlement is in the best interests of the proposed Settlement Class. My years of experience representing individuals in complex class actions contributed to an awareness of Plaintiffs' settlement leverage, as well as the needs of Plaintiffs and the proposed Settlement Class. While I believe in the merits of this case, I am also aware that a successful outcome is uncertain and would be achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals.

24. I believe this Settlement is a positive resolution for the Settlement Class and falls comfortably within the range of reasonableness and represents a fair and reasonable discount from the potential recovery.

*Class Definition.*

25. The Settlement Class consists of "all persons in California who purchased one or more Products from www.iCanvas.com or www.iCanvasArt.com, during the Class Period, at a discount from a higher reference price." Ex. 1 ¶ 2.18. "Excluded from the Settlement Class are governmental entities; counsel of record (and their respective law firms) for the Parties; Defendants and any of their parents, affiliates, subsidiaries, independent service providers and all of their respective employees, officers, and directors; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff." *Id.* The "Class Period" is January 1, 2016 through the date the Preliminary Approval Order is entered (i.e., January 16, 2025). *Id.* ¶ 2.3.

26. According to Defendants' records, there are over 10,000 Settlement Class Members.

*Injunctive Relief and Releases.*

27. Under the Settlement, Defendants will provide the Settlement Class with mandatory injunctive relief by way of modifications to Defendants' e-commerce website. Specifically, if the advertised reference price refers to the actual or estimated price charged by competing retailers for similar (but not identical) products, then Defendants will replace the term "REG" with "Comparable Value," "Estimated Value," or another similar term. Further, on individual product listing pages where a strikethrough price or reference price is displayed, Defendants agree to define and explain the strikethrough price or reference price using an adjacent hyperlink entitled "Details" or similar. Clicking a user's mouse pointer on the hyperlink shall lead to a page explaining the meaning of the strikethrough price or reference price.

28. In exchange for the injunctive relief provided by the Settlement, Settlement Class Members will release all, but only, claims for injunctive relief relating to the challenged advertising. Ex. 1 ¶ 2.15. The released claims expressly "*exclude* claims to monetary relief of any kind." *Id.*

**CAFA Notice**

29. Pursuant to the Agreement, on December 18, 2025, the Attorney General of the United States and California were notified of the proposed Settlement in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). No governmental entity has objected to the Settlement.

***Attorneys' Fees.***

30. The Settlement provides for Defendants to pay Class Counsel's reasonable attorneys' fees and costs in the amount of $195,000, subject to Court approval.

31. Class Counsel prosecuted this case on a purely contingent basis. As such, the firm assumed a significant risk or nonpayment or underpayment.

32. This matter has required me, and other attorneys at my firm, to spend time on this litigation that could have been spent on other matters. At various times during the litigation of this class action, this lawsuit has consumed significant amounts of my time and my firm's time.

33. Because Class Counsel undertook representation of this matter on a contingency-fee basis, we shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

34. If not devoted to litigating this action, from which any remuneration is wholly contingent on a successful outcome, the time Class Counsel spent working on this case could and would have been spent pursuing other potentially fee-generating matters.

35. Litigation is inherently unpredictable and therefore risky. Here, that risk was very real. False advertising and deceptive pricing class actions are highly factual and often turn on adopting one esteemed expert's opinion over another. Additionally, there is risk that a litigation class could not be certified (or could be decertified at a later stage) and

that Defendants would appeal any adverse judgment. Therefore, despite Class Counsels' devotion to the case and our confidence in the claims alleged against Defendants, there have been many factors beyond our control that posed significant risks.

36. Class Counsels' fees were not guaranteed—the retainer agreement counsel had with Plaintiffs did not provide for fees apart from those earned on a contingent basis, and, in the case of class settlement, approved by the Court.

37. Class Counsel have accrued 311.2 hours through January 2025, with a lodestar of $251,847.50, resulting in an average/blended hourly rate of just over $809. This time does not include the work on drafting the Motion for Final Approval. The hours Class Counsel spent litigating this matter reflect the reasonable and necessary effort required to achieve such a satisfactory result.

38. Based on my experience and that of my firm, the hourly rates charged by my firm[3] in this matter is in line with comparable hourly rates charged by other law firms that handle class action litigation in Southern California. Through my practice—both as a defense lawyer at two AmLaw 100 international firms for over eight years and a plaintiffs' class action lawyer—I have become familiar with the contingent and non-contingent market rates charged by attorneys in California. This familiarity has been obtained in several ways: (1) by litigating attorneys' fee applications; (2) by discussing fees with other attorneys; (3) by obtaining declarations regarding prevailing market rates filed by other attorneys seeking fees; and (4) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorneys' fees in legal newspapers and treatises. The information I have gathered shows that my firm's rates are in line with the contingent and non-contingent market rates charged by attorneys of reasonably

---

[3] The following attorneys and paralegals participated in this case: David K. Lietz (partner, 33 years of practice, $1,057/hour), Alexander E. Wolf (senior associate, 11 years of practice, $878/hour), Sandra Passanisi (paralegal, $239/hour), Heather Sheflin (paralegal, $258/hour), and Ashley Tyrrell (paralegal, $258/hour).

comparable experience, skill, and reputation for reasonably comparable class action work. For example:

    a. In November 2022, Winston & Strawn LLP submitted a fee application in an employment class action involving women's soccer, pending in the Central District of California, a true and correct copy of which is attached as **Exhibit 4**. Winston & Strawn is a large national defense firm and periodically engages plaintiffs'-side class action work. For the 2022 calendar year, Winson & Strawn charged the following hourly rates: $1,080 (Partner with 14.5 years experience), $1,060 (Partner with 11.5 years experience), $1,050 (Of Counsel with 12.5 years experience), $875 (Associate with 6.5 years experience), $725 (Associate with 4.5 years experience), and $340 (Paralegal).

    b. In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011. A true and correct copy of that article is attached as **Exhibit 5**. The article confirms the rates charged by experienced attorneys have continued to rise over this five-year period, particularly in large urban areas like San Francisco. It also shows that, over ten years ago, the top quartile of lawyers billed at an average of "just under $900 per hour."

    c. In *OWLink Tech., Inc. v. Cypress Tech. Co.*, No. 821CV00717SPGKESX, 2023 WL 9061081, at *2 (C.D. Cal. Dec. 12, 2023), hourly rates of $900 for an Associate with 7 years of experience, and $1,200 for experienced Partners, were held reasonable.

    d. In *Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 676 (C.D. Cal. 2022), Partner rates of between $1,160 to $1,370 and Associate rates of between $845 to $1,060 per hour were held reasonable.

  e. In *Ramirez v. Trans Union, LLC*, 2022 U.S. Dist. LEXIS 226302, at *24 (N.D. Cal. Dec. 15, 2022), hourly rates ranging from $560 to $1,325 for Lieff Cabraser attorneys, a plaintiffs' class action firm, were in line with prevailing rates.

  f. A true and correct copy of the Laffey Matrix (which proposes reasonable hourly rates in the Washington D.C. metro area and provides additional context) is attached as **Exhibit 6**.

39. Courts have previously approved my firm's billing rates in class action litigation. *E.g.*, *Bailey v. Rite Aid Corp.*, No. 4:18-cv-6926, ECF No. 178, at 9 (N.D. Cal. Dec. 16, 2022) (approving requested fees and holding that Milberg's rates were "commensurate with their experience and with the legal market"); *Spencer v. Knix Wear, Inc.*, No. 23-cv-07823, ECF No. 52 (S.D.N.Y. Apr. 24, 2024); *Comin v. Int'l Bus. Machines Corp. (IBM)*, No. 19-cv-07261, ECF No. 146 (N.D. Cal. Oct. 20, 2023); *Dickens v. Thinx, Inc.*, No. 22-cv-04286, ECF No. 56 (S.D.N.Y. June 8, 2023); *Julian v. TTE Technology, Inc.*, No. 20-cv-02857, ECF No. 152 (N.D. Cal. Jan. 23, 2023).

40. Class Counsel's billable time is reflected in the firm's time-keeping systems. In reviewing the hours of my firm, it becomes clear that the majority of the work on this matter was performed at the senior associate level (283.9 hours). Given the combined fees and costs request of $195,000—broken down as $185,410.42 in attorneys' fees and $9,589.58 in costs—the fees requested fairly represent a 0.736 negative multiplier based on hours incurred through preliminary approval.

41. The attorneys' fees sought in the Motion for Attorneys' Fees, Costs, and Service Awards are reasonable and seek fair and reasonable compensation for undertaking this case on a contingency basis, and for obtaining the relief for Plaintiffs and the Settlement Class. Class Counsel recognize that an average/blended hourly rate of $809 may be on the higher end of approved rates, but it is consistent with the market. However, even if the rates were reduced—and leaving aside the nationwide and specialized nature of Class Counsel's practice area—the lodestar multiplier would still be within the

acceptable range. A 50% reduction of Class Counsel's average hourly rate to $405 yields a reasonable lodestar multiplier of 2.00.

42. Class Counsel made efforts to carefully assign work so as to avoid duplication of efforts.

43. Pursuant to the Court's standing order, attached as **Exhibit 3** is summary of hours worked in chart format. A courtesy copy in Excel is concurrently provided to the Court by email.

*Costs.*

44. My firm has accrued $9,589.58 in out-of-pocket expenses pertaining to this litigation, consisting of the following:

| **Expense** | **Amount** |
|---|---|
| Filing/Court Fees | $487.00 |
| Service of Process Fees | $75.00 |
| Mediator Fees | $9,000 |
| Postage | $27.58 |
| **TOTAL** | **$9,589.58** |

45. These expenses are reasonable and necessary for the litigation and are modest in comparison to the enormous costs that likely would have been incurred if litigation had continued. Reimbursement of these costs is sought as part of the total request of $195,000.

*Service Awards.*

46. The Settlement provides for Defendants to pay a $5,000 service award to each of the two named Plaintiffs, subject to Court approval.

47. I believe that Mr. Nelkin and Ms. Contreras have diligently and adequately participated in and prosecuted this action on behalf of themselves and the putative Settlement Class. They gathered and provided information, and responded to requests for information, from Class Counsel. They provided information to Class Counsel in the lead up to mediation and discussed the mediation and follow-up negotiations with counsel. They have been diligent in responding to counsel and have stayed informed of the status of the action, including settlement. They understand that their role as Class Representatives is to remain informed regarding the litigation and assist Class Counsel in the interest of the Settlement Class. They understand that they cannot have any legal conflicts with the Settlement Class and there is no evidence in the record that Plaintiffs harbor any antagonistic interest. They also share the common goal with the Settlement Class to pursue truthful advertising regarding retailers' discount pricing practices. Thus, in recognition of their efforts, I believe each Plaintiff should be awarded a service award of $5,000.

\*     \*     \*

I declare under penalty of perjury of the laws of the United States that the foregoing is to my knowledge true and correct.  Executed February 26, 2025.

*/s/ Alexander E. Wolf*
Alexander E. Wolf